COMPTROLLER OF THE STATE OF NEW YORK, as Trustee of the Common Retirement Fund, Appellant-Respondent, v GARDS REALTY CORP. et al., Defendants, and CONGREGATION TIFERETH ISRAEL OF GLEN COVE, Respondent-Appellant.

Second Department, May 28, 1979

**APPEARANCES OF COUNSEL**

*Alan N. Worby (Herman L. Pedowitz* and *Bruce J. Bergman* of counsel), for respondent-appellant.

*Delson & Gordon* and *Dewey, Ballantine, Bushby, Palmer & Wood (George Halpern* of counsel), for appellant-respondent.

## OPINION OF THE COURT

*Per Curiam.*

■ Plaintiff seeks to foreclose consolidated mortgages. The cross appeals are from an order of the Supreme Court, Nassau County, which denied plaintiff's motion for summary judgment and failed to grant summary judgment to the defendant congregation. The order should be reversed and summary judgment granted to the plaintiff.

In 1955 Congregation Tifereth Israel of Glen Cove acquired a large tract of land upon which it built its synagogue and school. Since this acquisition, the congregation has sought a "suitable income-producing use" for a portion of the tract— the subject matter of this action—that was unused and vacant. On August 17, 1966 the congregation leased the portion to defendant Gards Realty for a term of 60 years. The lessee proposed to construct a complex of six-story office and apartment buildings on the premises. In contemplation of the difficulty Gards would face in arranging construction financing as a mere lessee, the congregation agreed to subordinate its fee interest to any mortgage lien taken by any lender provided, *inter alia,* that the mortgagee was an institutional lender and that the mortgage did not exceed 85% of the mortgagor's, i.e., Gards', appraised vaue. The lease was approved by resolution of the congregation membership and the board of directors. By order entered September 23, 1966, Special Term approved the lease.

A delay of four and one-half years ensued by reason of a suit brought by the congregation and Gards against the City of Glen Cove to reinstate the building permit issued in 1967 and subsequently revoked. By order of the Supreme Court, Nassau County, entered January 6, 1971, Mr. Justice ALBERT reinstated the permit, but reduced the size of the project. The delay in obtaining the permit imposed financial strains on Gards sufficiently onerous to induce it and the congregation to amend the lease to prevent Gards from abandoning the project. On December 18, 1970 Gards and the congregation executed a modification agreement which altered the lessee's rental obligations by providing for deferred payments. This modification agreement provided that, as altered, the August 17, 1966 lease "is in full force and effect." The December 18,

1970 agreement was duly approved by the congregation members and board of directors. By order entered December 29, 1971, Special Term approved the said modification agreement.

During the next three years, Gards executed a series of building loan agreements with Franklin National Bank and its assignee, the Comptroller of the State of New York, as trustee of the Common Retirement Fund, which were subsequently consolidated for a total indebtedness of $3.9 million. Both Gards and the congregation (by its president) duly executed mortgages on the premises as security therefor. Significantly, the Comptroller's staff evaluated the premises at $5,225,946 and an independent appraiser valued the premises at $5,400,000. Thus, under either appraisal, the loan amounted to approximately 75% of the appraised value of the premises and was within the subordination limits of 85% established in the lease.

Thereafter, Gards defaulted in meeting its obligations under the consolidated mortgages and the instant action for foreclosure was commenced in 1975.

The Comptroller moved for summary judgment and for the appointment of a referee to compute the amount due. The congregation opposed the motion and cross-applied for summary judgment on the ground that the purported execution of the underlying mortgage by the president of the congregation was *ultra vires* because consent of its members was not obtained as required by its constitution.

Special Term found that (1) the Comptroller's papers were insufficient under CPLR 3212 (subd [b]) since they were prepared by an attorney who did not have personal knowledge of material facts with respect to the execution and approval of the mortgage, and (2) the verified papers in opposition raised a genuine issue as to whether the mortgage was executed in compliance with the Religious Corporations Law and the congregation's constitution. It therefore denied the motion. For the reasons set forth, we disagree with the determination of Special Term.

As a preliminary matter, we note that Special Term's construction of CPLR 3212 (subd [b]) is too restrictive. The cited provision requires a motion for summary judgment to be supported by an affidavit of "a person having knowledge of the facts". However, "where the affidavit of an attorney on a motion for summary judgment is based on documentary evidence in the attorney's possession, it may have probative

value and should be evaluated by the court" *(Getlan v Hofstra Univ.,* 41 AD2d 830, 831, app dsmd 33 NY2d 646; see, also, *Tuttle v Juanis,* 54 AD2d 589). In the case at bar, the affidavit of the plaintiff's attorney, based upon documentary evidence in his possession, was sufficient.

Defendant congregation concedes, and we agree, that the main dispute reduces itself to this one question of law: whether the subordination clause in the lease is enforceable in the absence of the approval of the members of the congregation of each subsequent mortgage placed in reliance on said lease.

The agreement to subordinate (paragraph TENTH) provides, in part: "B. Landlord covenants, warrants and agrees that Tenant shall have the exclusive right, whenever and as often as Tenant may request, during the term of this Lease, to mortgage its fee title to the Premises and the improvements thereon and to subject and subordinate the said title and Landlord's interest in this Lease to the lien of the mortgage(s) which Landlord agrees to execute and deliver at Tenant's request, so that the said mortgage(s) shall be a valid and subsisting first lien upon the premises. Landlord covenants, warrants and agrees whenever and as often as Tenant may request to join in the execution of note(s) or bond(s) and mortgage(s) and such related and customary instruments as may be required to impose valid mortgage liens on the premises, or any portion or portions thereof that may be designated by Tenant and to execute such amendments and modifications of this Lease and documents in connection with such mortgage(s) as may be required by the mortgage(s) as Tenant requests. The aforesaid instrument(s) and/or mortgage(s) shall be secured by the premises or such part(s) thereof designated by Tenant, and the buildings and improvements thereon and this Lease."

In *Londner v Perlman* (129 App Div 93, affd 198 NY 629), the issue before the Appellate Division, First Department, was whether an agreement for subordination (indistinguishable from the clause in issue here) was enforceable in the absence of a subsequent execution of an instrument subordinating a purchase-money mortgage to a building loan mortgage. The court's cogent analysis of the problem is apposite *(supra,* p 96): "We have, therefore, presented upon uncontradicted evidence the case of a mortgagee who has in terms agreed to subordinate his mortgage to any building loan mortgage which should

be executed, and the making of a building loan upon the faith of that agreement. The right of the mortgage to the State Bank to a priority over the purchase-money mortgage is referable to and founded upon that agreement which became effectual in equity when the building loan moneys were in good faith advanced in reliance upon it * * * Upon the plainest principles of equity [the mortgagee] is now estopped from repudiating this agreement. He put it in the power of [the builders] to borrow money upon a building loan upon the faith of his promise to subordinate his purchase-money mortgages and cannot now be heard to repudiate his agreement. * * * That [the mortgagee] did not execute a further subordination agreement with especial reference to the loan of the State Bank is entirely immaterial. It was his duty to have done so, if called upon, for he had so agreed, and he cannot now repudiate his agreement upon which the State Bank relied by pleading that he failed or refused to do what he was legally bound to do."

At bar, the subordination agreement, which had twice been approved by the members of the congregation and the board of directors, became enforceable by the plaintiff when the plaintiff and its assignor were induced thereby to make the stipulated loan (see *Brooklyn Trust Co. v Fairfield Gardens,* 260 NY 16). It is thus unnecessary to determine whether the subsequent execution by the president of the congregation of the mortgage agreements was sufficient in and of itself to bind the congregation in the absence of the members' consent. Accordingly, summary judgment should be granted the plaintiff.

DAMIANI, J. P., TITONE, MARGETT and MANGANO, JJ., concur.

Order of the Supreme Court, Nassau County, dated August 2, 1976, reversed, on the law, with $50 costs and disbursements to plaintiff, and plaintiff's motion for summary judgment granted.