OPINION OF THE COURT
Jones, J.
 The determination made in a prior action that Con Edison was grossly negligent in connection with the 1977 blackout in the City of New York is binding and *553 conclusive on Con Edison in this action. Although plaintiffs may recover damages for physical injury to persons and property directly resulting from the service interruption, including damages resulting from looting and vandalism by rioters', they may not recover damages for additional expenditures, occasioned by the blackout, made by plaintiffs in the performance of their governmental functions, nor may they recover for loss of revenues assertedly attributable to the blackout.
On July 13,1977 at approximately 9:36 p.m. there was a complete failure of electrical service in the City of New York except for an area in the Borough of Queens which was supplied by the Long Island Lighting Company. The blackout lasted for approximately 25 hours with power not being completely restored until approximately 10:40 p.m. on July 14.
The present action was instituted on September 7, 1978 by the City of New York and 14 public benefit corporations to recover damages allegedly sustained as a result of Con Edison’s gross negligence and reckless and willful conduct with respect to the blackout.
Plaintiffs moved for partial summary judgment with respect to Con Edison’s liability for gross negligence “on the ground that, under the doctrine of collateral estoppel, a prior determination in another lawsuit (Food Pageant, Inc. v. Consolidated Edison Co., Inc., Supreme Court, Bronx County, Index No. 16971/77)[1] that the July 13-14, 1977 electric power failure * * * resulted from the gross negligence of the defendant Consolidated Edison, is conclusive and binding on the defendant Consolidated Edison in this action”. Con Edison thereupon made a cross motion for partial summary judgment, so far as pertinent for the purposes of the present appeal, (1) dismissing plaintiffs’ claims based on Con Edison’s contracts with the Power Authority of the State of New York (PASNY) because “plaintiffs are neither parties nor third-party beneficiaries of those contracts”, (2) dismissing “plaintiffs’ claims for *554 damages attributable to criminal activity, civil disturbances, municipal employee absenteeism and lost productivity” because “superseding causes preclude imposition of liability upon Con Edison for such damages”, and (3) dismissing “plaintiffs’ claims for reimbursement of municipal expenditures incurred during July 13-14, 1977” because “plaintiffs cannot recover as damages the costs of governmental operations which they were created to perform”.
Special Term granted plaintiffs’ motion and denied Con Edison’s motion as described above. The Appellate Division affirmed, without opinion, and granted both plaintiffs and Con Edison leave to appeal to our court. We modify the determination at the Appellate Division.
We agree with both courts below that on the issue of Con Edison’s liability for gross negligence in connection with the blackout, Con Edison is precluded by the adverse determination of the issue in Food Pageant v Consolidated Edison Co. (54 NY2d 167). The applicable principle in this case is that of third-party issue preclusion.[2]
It is plaintiffs who seek to invoke the principle of third-party issue preclusion to bar Con Edison from relitigating its liability for gross negligence. It is not disputed that this issue was actually litigated and determined by a valid and final judgment in Food Pageant and that the determination of that issue was essential to the judgment in that case. Plaintiffs contend, therefore, that the determination in Food Pageant is binding and conclusive in this case. Con Edison, having the burden[3] to demonstrate that the cir *555 cumstances of the prior determination justify affording it an opportunity to relitigate the issue of liability, advances several arguments in support of its contention that the determination in Food Pageant is not to be given preclu-sive effect.[4] These arguments, taken singularly or in combination, do not warrant the result for which Con Edison contends, and Con Edison has not tendered sufficient proof in admissible form to require trial of any issue of fact or reversal of the exercise of judgment by the courts below.
It is first contended that third-party issue preclusion should not apply because there are other judicial determinations concluding that Con Edison was not guilty of gross negligence in connection with the blackout.[5] Whatever *556 might be said of the effect properly to be given to inconsistent determinations of like judicial stature, in this instance it suffices to dismiss Con Edison’s contention to observe that the inconsistent determinations on which it would rely are those in cases tried in the Small Claims Part of the Civil Court of New York City as to which informal and simplified procedures are and which by express statutory provision are not to be deemed an adjudication of any fact at issue (other than the amount involved) with respect to any other action.[7]
Con Edison next argues that there is now available exculpatory evidence which in fairness requires that it be permitted to relitigate the issue of liability. Reference is made to investigative reports, in particular to the so-called Clapp Report. These reports were available and offered but rejected in the Food Pageant trial. Nothing suggests that the exclusion of this hearsay evidence was there error (and any contention that it was could have been subjected to appellate review on the appeal in that case), and no persuasive argument is now advanced to support admissibility in this case.
Con Edison next makes an oblique plea that we should reintroduce the former requirement of mutuality which we declared “a dead letter” in B.R. DeWitt, Inc. v Hall (19 NY2d 141, 147). To grant this plea would, of course, be entirely to eliminate third-party issue preclusion. It is understandable that Con Edison should express concern, in the light of the multiplicity of claims arising out of the blackout, that the issue of its gross negligence will have *557 been established in each case. Nevertheless, no sufficient justification is advanced to turn the clock back with respect to so fundamental a legal development as the elimination of the requirement of mutuality. We have been committed since DeWitt, and indeed even before (Israel v Wood Dolson Co., 1 NY2d 116), to the proposition that efficient utilization of the judicial system is served by preclusion of reliti-gation of issues as to which a litigant has had a full and fair opportunity for resolution, irrespective of the identity of his particular opponent. Nor does Con Edison advance any intermediate position warranting a different application of the principles of third-party issue preclusion with respect to a multiplicity of claims arising out of a community-wide disaster such as the in this case.
It is then argued that the determination in Food Pageant should not be given preclusive effect because of indications that it was the result of compromise in the jury room. No tender has been made, however, of proof in admissible form sufficient to require trial of this factual issue. The arguments of Con Edison are grounded only in speculation, and it cannot be said as a matter of law that the Food Pageant verdict was the result of impermissible compromise.
The circumstance, to which Con Edison next points, that the claim in Food Pageant and the amount of the jury’s verdict ($40,500) may be said to be “small in absolute terms and particularly so when compared to the aggregate of over $200 million in claims against Con Edison arising out of the 1977 blackout”, provides no basis to deny application of third-party issue preclusion. In Food Pageant, Con Edison had a full and fair opportunity to litigate the issue of gross negligence, the forum and applicable procedures were the same, the burden of persuasion was the same, and Con Edison, explicitly then recognizing the potential preclusive effects of an adverse determination in that case, had every incentive to defend that action fully and vigorously.
Nor does the adoption of a rule of comparative negligence in New York (CPLR art 14-A) foreclose application of third-party issue preclusion in the circumstances of this case. No contention whatsoever is put forth by Con Edison that any action or omission to act on the part of any of *558 plaintiffs contributed to cause the blackout. There simply is no issue of comparative negligence involved in the question of Con Edison’s responsibility for the blackout. It may be, however, that principles of mitigation will require consideration of certain action Or inaction on the part of plaintiffs in the determination of damages.
Finally with respect to the preclusion issue, we reject as wholly without merit Con Edison’s assertion that to apply third-party issue preclusion would be to deprive it of the due process to which it is constitutionally entitled. The characterization of this appeal as “presenting a question of fundamental fairness” neither concludes nor advances the argument. Con Edison cites no authority, and we know of none, which now regards the application of third-party issue preclusion as posing a question of constitutional dimension where in the prior action a full and fair opportunity to litigate has been afforded.
For the reasons stated we conclude that the prior determination in Food Pageant with respect to Con Edison’s liability for gross negligence in connection with the 1977 blackout is binding and conclusive on Con Edison in this action.
We reject, too, Con Edison’s argument that because the city and the other plaintiffs associated with it were customers of PASNY and not direct customers of Con Edison, they are not entitled to recover against Con Edison. In 1974 a new section, “§1001-a. Emergency Provisions For The Metropolitan Area of the City of New York”, was added to the Public Authorities Law (L 1974, ch 369, § 2). Pursuant to the authorization of that section, in December, 1974 and December, 1975 PASNY acquired from Con Edison two partially completed generating units (the Astoria 6 and the Indian Point 3 Units). The underlying legislation and both acquisitions anticipated that Con Edison would continue to provide transmission and delivery of the electricity produced in the two plants. In conformity with that expectation, a service agreement was entered into by PASNY and Con Edison for delivery of power and energy from the Astoria 6 Unit and the Indian Point 3 Unit, in which was recited Con Edison’s willingness, by use of its existing facilities, to assist PASNY in serving the *559 needs of the Astoria-Indian Point customers, and Con Edison became obligated to provide the same quality of service to PASNY’s customers as it did to its own customers and under Con Edison’s regular tariff schedules. In a simultaneously executed “Contract for the Sale of Power and Energy”, Con Edison agreed to provide sufficient energy to meet the requirements of PASNY’s affected customers.
Against this background we have no difficulty in concluding that all the plaintiffs were third-party beneficiaries of the agreements between PASNY and Con Edison. They were precisely the consumers for whose benefit the legislation was enacted and the agreements made between PASNY and Con Edison.
To be distinguished are our holdings in Moch Co. v Rensselaer Water Co. (247 NY 160 [contract between water company and city to supply water for fire hydrants did not create a duty to member of the public]) and Kornblut v Chevron Oil Co. (62 AD2d 831, affd on opn below 48 NY2d 853 [contract with Thruway Authority to provide repair services did not create duty to members of the public]). In neither of those cases did the operative contract provide that the service was to be rendered other than for the contracting party, city or authority. Moreover, in Moch we noted the distinction between the agreement of the water company, there in issue, to furnish water at the hydrants and the agreement of the water company to provide direct service to members of the public at their homes and factories (247 NY, pp 164, 166). In the present instance, the purpose of the enabling legislation was expressly stated to be “To preserve reliability of electric service in the metropolitan area of the city of New York” (Public Authorities Law, § 1001-a, subd 1), and the service agreement contained the express obligation to “operate and maintain all the facilities necessary to deliver power to Astoria-Indian Point Customers [which included plaintiffs] in accordance with good utility operating practice”. Indeed, the essence of the responsibility of a public utility is to provide services to the consuming public.
We turn then to issues posed by Con Edison’s motion for partial summary judgment with respect to the extent of the *560 damages to which plaintiffs may be entitled, on appropriate supporting proof, observing that plaintiffs’ action sounds both in contract and in tort. Initially we note that procedurally Con Edison may raise challenges in this regard by a motion for partial summary judgment seeking dismissal of claims for specified and distinct categories of damages (CPLR 3212, subd [e]; see Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3212:30, p 448).
It is not disputed that plaintiffs would be entitled, on supporting proof, to recover damages for physical injury to persons and property directly resulting from the service interruption. Con Edison disputes their right, however, to recover damages resulting from looting and vandalism by rioters related to the blackout. We reject this contention inasmuch as plaintiffs have shown facts sufficient to require a trial of the factual question of whether intervention of the rioters was within the contemplation of the parties or reasonably to have been foreseen by Con Edison. If so, a jury could, under appropriate instructions, properly include this element of damage in any award to plaintiffs (cf. Nallan v Helmsley-Spear, Inc., 50 NY2d 507).
We rule in favor of Con Edison, however, as to two other categories of damage. Con Edison argues persuasively that plaintiffs should not be permitted to recover costs incurred for wages, salaries, overtime and other benefits of police, fire, sanitation and hospital personnel from whom services (in addition to those which would normally have been rendered) were required in consequence of the blackout. The general rule is that public expenditures made in the performance of governmental functions are not recoverable (see, generally, Matter of TMI Litigation Governmental Entities Claims, 544 F Supp 853, 855, mod sub nom. Pennsylvania v General Public Utilities Corp., 710 F2d 117 [caused by nuclear incident]; City of Bridgeton v B.P. Oil, 146 NJ Super 169, 178-179 [caused by oil spill]; Town of Freetown v New Bedford Wholesale Tire, 384 Mass 60 [caused by dumping of large quantity of tires]).[8] The general rule is grounded *561 in considerations of public policy, and we perceive nothing in the different and somewhat closer relationship between Con Edison and plaintiffs in this case which would warrant departure from that rule. We additionally note that certain exceptions to the general rule have been created by statutory enactment to give a municipality a claim for expenditures for fire fighting and other police power services. (See, e.g., General Municipal Law, § 207-c [municipality given a cause of action for reimbursement against third-party tort-feasor for any sums paid to injured policemen as salary and medical expenses]; id., § 209 [local fire department given claim for reimbursement for fire fighting costs against municipality which issued call for outside assistance]; id., § 209-g [municipality providing fire or police aid pursuant to § 209-e or § 209-f given claim against municipality requesting such aid]; State Finance Law, § 54-e [municipality whose fire department has responded to a fire on property under jurisdiction of New York State given right to submit claim for State reimbursement of fire fighting costs].) No statute is called to our attention which would accord a comparable benefit to plaintiffs in the circumstances of this case.
Finally, and we think effectively, Con Edison disputes the right of plaintiffs to recover revenues allegedly lost in consequence of the blackout — taxes not recovered on sales, transfers, and business transactions not undertaken, transit fares and tolls not paid, and receipts from wagers not placed with the Off-Track Betting Corporation. In the same category is to be included loss of productivity of employees due to absenteeism. The tender of proof of damages in this category is speculative only, determinable solely by reference to collateral transactions (or their absence), and insufficient to defeat Con Edison’s motion. (Cf. Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 334-335). Additionally, there are strong considerations of public policy which militate against recognition of losses sustained by municipal and public benefit corporations in consequence of adverse effects on the general economy. That there will inevitably be interruptions in utility services from time to time must be taken for granted. Loss of revenues by municipal and public benefit *562 corporations in consequence of the interruption of utility services, however, is the economic counterpart of the incurment of added costs attributable to such interruption (see supra, pp 560-561). In neither case will recovery be allowed.[9]
For the reasons stated, the order of the Appellate Division should be modified, without costs, to grant Con Edison’s motion for partial summary judgment dismissing plaintiffs’ claims for damages on account of expenditures made for additional governmental services furnished in consequence of the blackout and for loss of revenue and similar economic damage asserted to be attributable to the blackout, and as so modified, affirmed.[10]
Chief Judge Cooke and Judges Jasen, Wachtler, Meyer, Simons and Kaye concur.
Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed. Cross appeal by plaintiffs dismissed, without costs. Question certified answered in the negative.

. When this case reached our court we upheld the jury verdict which found Con Edison to have been grossly negligent in causing the 1977 blackout and which awarded plaintiff grocery store chain damages in the sum of $40,500 for food spoilage and loss of business. (.Food Pageant v Consolidated Edison Co., 54 NY2d 167).

. Issue preclusion between the same parties is to be distinguished from third-party issue preclusion. In the former case as stated in section 27 of the Restatement of Judgments, Second — “When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim”, subject to a very narrow range of exceptions {id.., § 28). By some contrast the principle of third-party issue preclusion is that, again in the phraseology of the Restatement (§ 29) — “A party precluded from relitigating an issue with an opposing party, in accordance with §§ 27 and 28, is also precluded from doing so with another person”. The range of circumstances which may lead to avoidance of preclusion, however, is now much broader — “unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue.” With respect to the distinction between issue preclusion between the same parties and third-party issue preclusion, see Matter of American Ins. Co. (Messinger — Aetna Cas. & Sur. Co.) (43 NY2d 184, 190).

. (Schwartz v Public Administrator, 24 NY2d 65, 73.)

. The relevant factors to be considered are set out in section 29 of the Restatement of Judgments, Second, and in Schwartz. Section 29 provides in full as follows:
“§29. Issue Preclusion in Subsequent Litigation with Others
“A party precluded from relitigating an issue with an opposing party, in accordance with §§ 27 and 28, is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. The circumstances to which considerations should be given include those enumerated in § 28 and also whether:
“(1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;
“(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined;
“(3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary;
“(4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;
“(5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding;
“(6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto;
“(7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based;
“(8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.”
The articulation in Schwartz appears at page 72, as follows: “A decision whether or not the plaintiff drivers had a full and fair opportunity to establish their nonnegligence in the prior action requires an exploration of the various elements which make up the realities of litigation. A comprehensive list of the various factors which should enter into a determination whether a party has had his day in court would include such considerations as the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation.”

. (Penichet v Consolidated Edison Co., NYLJ, May 1, 1980, p 7, col 2; Lehman v Consolidated Edison Co., NYLJ, March 25, 1980, p 10, col 6; Finkelstein v Consolidated *556 Edison Co., NYLJ, May 1,1979, p 13, col 3; LoVico v Consolidated Edison Co., 99 Misc 2d 897; Lee v Consolidated Edison Co., 95 Misc 2d1 120.)

. CCA 1804 provides: “The court shall conduct hearings upon small claims in such manner as to do substantial justice between the parties according to the rules of substantive law and shall not be bound by statutory provisions or rules of practice, procedure, pleading or evidence, except statutory provisions relating to privileged communications and personal transactions or communications with a decedent or mentally ill person. Disclosure shall be unavailable in small claims procedure except upon order of the court on showing of proper circumstances. The provisions of this act and the rules of this court, together with the statutes and rules governing supreme court practice, shall apply to claims brought under this article so far as the same can be made applicable and are not in conflict with the provisions of this article; in case of conflict, the provisions of this article shall control.”

. CCA 1808 provides: “A judgment obtained under this article may be pleaded as res judicata only as to the amount involved in the particular action and shall not otherwise be deemed an adjudication of any fact at issue or found therein in any other action or court.”

. For discussion of recovery of damages by nongovernmental plaintiffs, see Dunlop Tire & Rubber Corp. v FMC Corp. (53 AD2d 150).

. In private litigation, recovery of damages for loss of profits generally depends on the certainty and specificity of the proof (see Dunlop Tire & Rubber Corp. v FMC Corp., 53 AD2d 150, 154-156). Thus, in Food Pageant (54 NY2d 167) a private litigant was awarded such damages. In that case, it is to be observed, Con Edison registered no protest to the charge that damages could be awarded for loss of profits, and in our court did not challenge the sufficiency of the evidence to support such an award.

. The cross appeal taken by plaintiffs should be dismissed on the ground that it does not lie inasmuch as they took no appeal to the Appellate Division.