GTF MARKETING, INC., Respondent, v COLONIAL ALUMINUM SALES, INC., Appellant.

Second Department, April 22, 1985

**APPEARANCES OF COUNSEL**

*Jessel Rothman, P. C. (Margaret D. Kranz* on the brief), for appellant.

*Howard L. Blau* for respondent.

## OPINION OF THE COURT

TITONE, J. P.

■ In this action to recover damages for breach of contract, defendant appeals from an order of the Supreme Court, Suffolk County, which denied its motion for summary judgment. At issue is the reach of the issue preclusion branch of the doctrine of former adjudication. We conclude that an alternative finding made in two other consolidated actions brought by plaintiff that enforcement of its contract would be "shocking to the conscience of the Court", is binding upon plaintiff in this action. Further, the only opposition to the motion for summary judgment consisted of an attorney's hearsay affidavit, which is without probative weight. Therefore, the order appealed from should be reversed and the complaint dismissed.

Plaintiff commenced this action to recover damages of $124,630 arising out of an alleged breach of contract. It claims that it offered and supplied to defendant some 12,463 "leads" of prospective customers for aluminum siding, roofing and other aspects of the defendant's business at $10 per lead. The leads consisted of the names of persons who had indicated on a survey that they planned to buy aluminum siding, roofing, exterior precast stone, basement alterations or solar energy equipment within the next six months. Defendant states, without contradiction in evidentiary form, that the "leads" amounted to nothing more than a random selection of names and addresses which could be obtained from a telephone book; they were absolutely useless.

Separate actions against two other contractors had been previously initiated by plaintiff in Nassau County (*see, GTF Mktg. v Dodge Home Remodeling Corp.,* 110 AD2d 818; *GTF Mktg. v Marjo Sys.,* 110 AD2d 818). Examination of the pleadings and the letter agreements in those cases shows them to be virtually identical, and defendant avers, again without contradiction, that the same survey was used as the basis for the claims in all three cases.

After a joint nonjury trial before Justice Robbins, the Nassau County actions were dismissed. Justice Robbins found that plaintiff failed to sustain its burden of proof and that the contract was unenforceable as it amounted to nothing less than "extortion and or robbery" because, with respect to the people surveyed, there was "no evidence in the record to support a finding that the alleged prospective home owners at any time expressed an interest of having any work done". Justice Robbins went on to say:

"My observation with regard to how this Court would characterize the decision of this Court if I were to grant a judgment in favor of the plaintiff in this case, it would be so repugnant to the conscience of this Court, that it would, in my judgment, constitute an extortion and or robbery, again, with the aid and complicity of the Court. This Court declines to be a party to such an act.

"I believe it is well established law that even if there were a contract, if the Court found that it so substantially, so over-reaching as to shock the conscience of the Court, that the Court may, in the interest of justice, deny any recovery to the extent that the Court would not become a participant in such a scheme.

"Both of these cases, let me say again however, as emphatically as I can muster, emphatically as I can state, that never in all my years have I seen anything so shocking to the conscience of this Court.

"Argument has been made that the defendant made a bad business judgment, perhaps, but to ask this Court to enforce it is to suggest to the Court that the Court become a knave, blind, weak, whimpering, to wring his hands and say, 'What can I do? I can do nothing.' Well, on the contrary, on the law of this case I find that the plaintiff has not made out, in either of these cases they have not — strike that — I find that the plaintiff has not sustained the burden of proof on the evidence credited by the Court.

"And further, and with regard to the shocking of the conscience of the Court, it is the claim, the underlying claim under the circumstances of this case that I want to address that is shocking to the conscience of the Court, to make it clear that there is [sic] two separate things, either one of which would be sufficient to dismiss the plaintiff's causes of action, this case both apply".*

Based upon this decision, defendant sought summary judgment on the ground of issue preclusion, setting forth the pertinent details in an affidavit of its president. Plaintiff opposed by an attorney's affidavit, urging that the motion should be denied as there were separate agreements and issues of fact.

Special Term denied the motion, stating that it "cannot fairly be said that upon a trial, plaintiff will not be able to prove some performance under the contract, and any unconsciounnability [sic] that may have been justifiably found following trial in the

---

* Those judgments are being affirmed by this court (*GTF Mktg. v Dodge Home Remodeling Corp.*, 110 AD2d 818; *GTF Mktg. v Marjo Sys.*, 110 AD2d 818).

Nassau cases is not evident from a reading of the contract itself". We reverse, grant summary judgment, and dismiss the complaint.

It is now axiomatic in New York that mutuality is " 'a dead letter' " (*Koch v Consolidated Edison Co.*, 62 NY2d 548, 556, quoting *B. R. DeWitt, Inc. v Hall*, 19 NY2d 141, 147). When issue preclusion is asserted, the core question is whether the party against whom issue preclusion is sought to be invoked has had "a full and fair opportunity to contest" the issue in prior litigation, irrespective of the identity of the adversary (*Schwartz v Public Administrator of County of Bronx*, 24 NY2d 65, 71; *see, Koch v Consolidated Edison Co., supra; Kartiganer Assoc. v Wehran Eng.*, 92 AD2d 911, 912, *lv denied* 59 NY2d 603).

Similarly, whatever may be the rule elsewhere, in this State an alternative finding made by the trier of fact after a full trial will be given preclusive effect when it is clear that though an alternative finding, the determination was neither "casual [n]or of any lesser quality than had the outcome of the trial depended solely on this issue" (*Malloy v Trombley*, 50 NY2d 46, 52; *cf. O'Connor v G & R Packing Co.*, 53 NY2d 278, 282). Inasmuch as it is clear that Justice Robbins gave careful consideration to the alternative findings and since plaintiff had a full and fair opportunity to litigate the issues and to appeal from Justice Robbins' ruling (*Industralease Automated & Scientific Equip. Corp. v R.M.E. Enters.*, 58 AD2d 482, 489), we turn to the central question which divides us, i.e., whether "the issue as to which preclusion is sought [is] identical with the issue decided in the prior proceeding" (*Capital Tel. Co. v Pattersonville Tel. Co.*, 56 NY2d 11, 17; *see, Kartiganer Assoc. v Wehran Eng., supra*). A majority of the court concludes that there is a sufficient identify of issue to preclude plaintiff from relitigating the legal enforceability of its contract.

To be sure, the determination of unconscionability is a multifacited one, embracing procedural and substantive admixtures (*see, Lister Elec. v Incorporated Vil. of Cedarhurst*, 108 AD2d 731; White and Summers, Uniform Commercial Code ch 4 [2d ed]; Ellinghaus, In Defense of Unconscionability, 78 Yale LJ 757; Leff, Unconscionability and the Code — The Emperor's New Clause, 115 U of Pa L Rev 485). Our dissenting colleague has written that there are "extreme cases where a contractual term is so outrageous and oppressive as to warrant a finding of unconscionability irrespective of the contract formation process" though generally "there must be a showing of both a lack of meaningful choice and the presence of contractual terms which

unreasonably favor one party" (*State of New York v Wolowitz,* 96 AD2d 47, 68).

We need not decide the category within which the present contractual agreement falls, a matter that could be of relevance in some cases, as, on the record before us, we are persuaded that the "commercial setting, purpose, and effect" of the unconscionability issue presented to Justice Robbins was identical to the issue sought to be litigated by plaintiff here (*Wilson Trading Corp. v David Ferguson, Ltd.,* 23 NY2d 398, 403; *cf. Behren v Papworth,* 35 AD2d 798, *appeal dismissed* 30 NY2d 532). Not merely are the contractual provisions the same, but the names and addresses supplied to defendant were from the same purported survey as that utilized in the Nassau County cases. Justice Robbins necessarily focused on the fraudulent nature of the survey in finding the agreement to amount to a "robbery" because he found "no evidence * * * to support a finding that the alleged prospect or prospective home owners at any time expressed an interest of having any work done". The peculiarities of the contractual formation played no part in this determination. The quality of performance in all the cases stems from the same survey, found to be fraudulently portrayed (*cf. Frankel v Manufacturers Hanover Trust Co.,* 106 AD2d 542). Justice Robbins' findings should be given preclusive effect here because the unconscionability aspect of the transaction rests upon that common factor, not the particular contract itself (*Zabriskie v Zoloto,* 22 AD2d 620; *cf. Chisholm-Ryder Co. v Sommer & Sommer,* 78 AD2d 143; *Jones v Star Credit Corp.,* 59 Misc 2d 189; *Matter of State of New York v ITM, Inc.,* 52 Misc 2d 39).

Cases like *Zabriskie v Zoloto* (*supra*) illustrate the flaws in the dissenter's arguments. In *Zabriskie,* plaintiff brought a declaratory judgment action against the defendant to determine their respective rights and interests in certain attorney's fees which were payable from settlement proceeds of several claims filed by three meat dealer clients against the New York Central Railroad. A judgment was rendered against plaintiff, the court expressly determining that there was no fee-sharing agreement between plaintiff and defendant and that none of the meat dealers were plaintiff's clients. A second action was brought to recover fees involving other alleged clients. Although "the two actions involve[d] different meat dealer claims and * * * [were] dissimilar", the Appellate Division, First Department, held that plaintiff was "bound by the prior findings and determination that he had no meat damage claimant clients on an individual basis and that he had no fee-sharing agreement with the defendant with respect to any such claimants" (*Zabriskie v Zoloto,* 22

AD2d 620, 622, 624, *supra; cf. Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 73, *supra).*

That defendant was not a party to the prior cases is, of course, irrelevant. It is axiomatic that issue preclusion can operate in favor of strangers to the original litigation (*Koch v Consolidated Edison Co.,* 62 NY2d 548, 554, *supra;* Restatement [Second] of Judgments § 29; *cf. Matter of American Ins. Co. [Messinger — Aetna Cas. & Sur. Co.],* 43 NY2d 184, 190). Moreover, here it is alleged, again without contradiction, that plaintiff's attorney advised Special Term that he wished to try the *Dodge* and *Marjo* cases (*supra*) first because "a decision in those cases would determine plaintiff's position in the case at bar".

■ Quite apart from the question of issue preclusion, it is significant that the defendant's sworn allegations in support of its motion for summary judgment — that the "leads" consisted of a useless list of names and addresses which could be obtained from a telephone book and were not "leads" as that term is understood in the industry — were never refuted. The affidavit of plaintiff's attorney submitted in opposition to the motion is without evidentiary value and raises no triable issue of fact (*Zuckerman v City of New York,* 49 NY2d 557, 563; *Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.,* 42 NY2d 496, 500; *cf. Russo Realty Corp. v Wilbert,* 98 AD2d 745).

It is self-evident that plaintiff possesses the requisite information concerning the manner in which the list supplied to the defendant was compiled, the pivotal issue (*see, Moxon v Barbour,* 106 AD2d 558). Plaintiff does not, and indeed could not, contend that these facts are not within its control (*see, Capelin Assoc. v Globe Mfg. Corp.,* 34 NY2d 338, 342). Nor does "it appear from affidavits submitted in opposition to the motion that facts essential to justify opposition may exist" (CPLR 3212 [f]; *see, e.g., Moxon v Barbour, supra; Citibank v Furlong,* 81 AD2d 803, 804). The showing requisite to defeat a motion for summary judgment has not been made (*Auerbach v Bennett,* 47 NY2d 619, 635-636; *Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065; *Capelin Assoc. v Globe Mfg. Corp.,* 34 NY2d 338, *supra; Indig v Finkelstein,* 23 NY2d 728; *Doran v Mutual Benefit Life Ins. Co.,* 106 AD2d 540). Plaintiff has not carried its burden of demonstrating that the circumstances of the prior determination justify affording it a second chance at bat (*Koch v Consolidated Edison Co.,* 62 NY2d 548, 554-555, *supra; Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 73, *supra; Frankel v Manufacturers Hanover Trust Co.,* 106 AD2d 542, *supra).*

For the reasons stated, the order appealed from should be reversed and the complaint dismissed, with costs.

GIBBONS, J. (dissenting). In the underlying action to recover damages for breach of contract, the principal issue which divides this court is whether the prior determination of the Supreme Court, Nassau County (Robbins, J.), in two related contract actions, *GTF Mktg. v Dodge Home Remodeling Corp.* and *GTF Mktg. v Marjo Sys.* (*see, GTF Mktg. v Dodge Home Remodeling Corp.*, 110 AD2d 818; *GTF Mktg. v Marjo Sys.*, 110 AD2d 818) bars the instant claim, i.e., whether the alternative finding by the court in those consolidated actions that enforcement of the underlying contracts would be "shocking to the conscience of the Court", precludes the plaintiff from attempting to enforce a similar contract as against the defendant at bar. In my view, this question should be answered in the negative.

Although I do not take issue with the broad principles of law espoused by the majority, I do take exception to their applicability to the facts of the instant case, for, in my opinion, the only issue decided by Special Term on the question of "unconscionability" in the *Dodge* and *Marjo* cases (*supra*) was that the quality of the plaintiff's performance in those cases was so defective that enforcement of the contracts would, under the facts presented, be shocking to one's sense of fairness. Thus, it was specifically stated by Justice Robbins that "with regard to shocking the conscience of the Court, it is the claim, the underlying claim *under the circumstances of this case* that I want to address that is shocking to the conscience of the Court" (emphasis supplied).

This conclusion, as the majority so aptly notes, was, in turn, based upon Special Term's observation that there was "no evidence [before it] * * * to support a finding that the alleged prospect or prospective home owners [at issue in that litigation] at any time expressed an[y] interest [in] having any work done" for them, a finding which is fully consistent with the court's further determination that the plaintiff, GTF Marketing, had failed to perform its contract to supply bona fide "leads" to the respective defendants and that the foregoing defect was fatal to its right to recover. By way of contrast, it may well be established upon the trial of this action (1) that the "leads" provided to the defendant at bar were genuine, (2) that their quality was such as to confer a substantial benefit upon the defendant, and (3) that any diminution in the value of those "leads" was directly attributable to the manner in which the defendant approached them. Accordingly, since Special Term's alleged pronouncement

of "unconscionability" in those cases was specifically predicated upon the nature of the facts before it, and since the facts of those cases, including the quality of the plaintiff's performance, must necessarily differ from the facts of this case given the existence of *separate* contracts to provide *separate* lists of potential customers for *different* home improvement services, it is my belief that the dismissal of the complaints in the *Dodge* and *Marjo* actions is not a bar to the maintenance of this action.

While the unconscionability of a contract is admittedly a question of law for the court to determine (*see, e.g., Wilson Trading Corp. v David Ferguson, Ltd.,* 23 NY2d 398, 403; *State of New York v Wolowitz,* 96 AD2d 47, 68; *Industralease Automated & Scientific Equip. Corp. v R.M.E. Enters.,* 58 AD2d 482, 488-489), I would merely observe that the underlying finding in both the *Dodge* and the *Marjo* cases (*supra*) is not strictly of this nature, and was predicated, instead, upon the proven inadequacy of the plaintiff's performance. Moreover, even if properly viewed as a de jure finding of "unconscionability", it does not necessarily follow that a finding of unconscionability in a contract action between A and B requires an identical conclusion with regard to a separate, albeit similar, contract entered into between A and C. Generally, such questions cannot be resolved in a vacuum. As Justice Hopkins observed in *Industralease Automated & Scientific Equip. Corp. v R.M.E. Enters.* (*supra,* at p 489), "The test [of unconscionability] has been * * * defined 'to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party', and characterized 'by a gross inequality of bargaining power' (*Williams v Walker-Thomas Furniture Co.,* 350 F2d 445, 449)." In fact, as this court has had occasion to note in its recent decision in *State of New York v Wolowitz* (96 AD2d 47, 68, *supra* [Gibbons, J.]), "While there may be extreme cases where a contractual term is so outrageous and oppressive as to warrant a finding of unconscionability irrespective of the contract formation process (see, e.g., *Jones v Star Credit Corp.,* 59 Misc 2d 189, 192), *such cases are the exception*" (emphasis supplied). Contracts, as here, calling for the agreed payment of only $10 per "lead" for access to potential purchasers of valuable home improvement services plainly does not fall within this limited exception, as there can be little doubt that had the plaintiff at bar established due performance of its prior agreements in either the *Dodge* or *Marjo* cases, it would have recovered a judgment therein.

In short, where, as in the case at bar, the contracts in question are legally distinct documents, covering different subjects, and

negotiated at different times, by different people, in presumptively different bargaining positions, it does not necessarily follow that a so-called finding of "unconscionability" in one instance will be determinative of a subsequent cause of action to enforce a separate although similar contract between different parties. This is especially so where, as here, the finding by the first court was apparently based *solely* upon the nature of the plaintiff's performance under the contracts then at issue and the quality of the results achieved. The quality of plaintiff's performance under the contract at bar has yet to be determined, and, as if to add insult to injury, knowledge of the facts upon which the foregoing is to be determined presently lies exclusively with the moving defendant (*see,* CPLR 3212 [f]). The pivotal issue in the instant case is not, as the majority maintains, the manner in which the list of prospective customers was compiled by the plaintiff, but rather the quality of that compilation as a viable source of "leads". This knowledge, at present, is beyond plaintiff's reach.

*Zabriskie v Zoloto* (22 AD2d 620, 624) is not to the contrary, as the court in a prior declaratory judgment action in that case had specifically found that the plaintiff, a lawyer, "had *no* meat damage * * * clients on an individual basis and that he had *no* fee-sharing agreement with the defendant with respect to any such claimants" (emphasis supplied). Accordingly, a subsequent cause of action between the same parties predicated upon plaintiff's alleged entitlement to counsel fees based on his claimed representation of other meat damage clients was deemed barred. No comparable finding exists in the case at bar, as Special Term's conclusion in the *Dodge* and *Marjo* cases (*supra*) that there was "no evidence * * * that the alleged prospect or prospective home owners at any time expressed an[y] interest [in] * * * having any work done" was necessarily restricted to the prospective consumers of the home improvement products at issue in those actions, and is not tantamount to a finding that no survey was ever conducted. Moreover, the very fact that the purported finding of unconscionability is directly related to the quality of the performance as demonstrated in those actions only serves to buttress the present suggestion that the quality of the performance in the instant case is the relevant consideration and has yet to be determined.

Turning briefly to the question of the sufficiency of the moving affidavits, I would simply note that "[t]he burden rests upon the litigant claiming the benefit of [a] former judgment to prove that the issue he now urges was involved in the prior action

either by actual determination or necessary implication" (*Chisholm-Ryder Co. v Sommer & Sommer,* 78 AD2d 143, 144; *Capital Tel. Co. v Pattersonville Tel. Co.,* 56 NY2d 11, 17-18), and that where, as here, the proponent of a motion for summary judgment has failed to establish his right to the relief requested as a matter of law (CPLR 3212 [b]), the motion will be denied, regardless of any alleged inadequacy in the opposing papers (*Winegrad v New York Univ. Med. Center,* 64 NY2d 851; *Matter of Redemption Church of Christ of Apostolic Faith v Williams,* 84 AD2d 648; *Walski v Forma,* 54 AD2d 776; *Stelick v Gangl,* 47 AD2d 789; *Greenberg v Manlon Realty,* 43 AD2d 968). Upon such an analysis, it is not necessary to reach the further question of whether an attorney's affirmation addressing an issue of law which is the basis of a motion for summary judgment and opposing the same based upon matters appearing on the face of the record is legally sufficient to defeat such a motion (*cf. Federal Deposit Ins. Corp. v Kassel,* 72 AD2d 787; *Comptroller of State of N.Y. v Gards Realty Corp.,* 68 AD2d 186; *Tuttle v Juanis,* 54 AD2d 589).

Since the defendant, in my view, has failed to establish that the issue as to which preclusion is sought is identical to any of the issues which were decided adversely to the plaintiff in the prior actions (*see, Capital Tel. Co. v Pattersonville Tel. Co.,* 56 NY2d 11, 17, *supra; Kartiganer Assoc. v Wehran Eng.,* 92 AD2d 911, 912, *lv denied* 59 NY2d 603), Special Term did not err in denying its motion for summary judgment. The order appealed from should, therefore, be affirmed.

MANGANO and BROWN, JJ., concur with TITONE, J. P.; GIBBONS, J., dissents and votes to affirm the order appealed from, with an opinion.

Order of the Supreme Court, Suffolk County, dated June 30, 1983, reversed, on the law, with costs, defendant's motion for summary judgment granted, and complaint dismissed.