OPINION OF THE COURT
 

 Gabrielli, J.
 

 The case and appeal submitted for our review arises from the 1977 New York City blackout, which left approximately three million customers of Consolidated Edison of New York located in New York City and Westchester County without electrical power. Plaintiff, a grocery store chain, brought suit seeking damages for food spoilage and loss of business. Presented for our consideration is whether a jury verdict finding defendant to have been grossly negligent may stand.
 

 
 *171
 
 On July 13, 1977, Con Edison’s entire electrical power system blacked out. The apparent initiating event was the combination of two lightning strokes, occurring within 18 minutes of each other, causing two double circuit outages of transmission lines linking Con Edison’s system with the other electrical utilities in the New York Power Pool. At trial, plaintiff alleged several careless acts by Con Edison which precipitated the eventual power outage. First, plaintiff urged that several power sources were unjustifiably out of service on the evening of the blackout. It was alleged that the Hudson-Farragut tie, a power line which linked Con Edison’s system with that of the Public Service Electric and Gas Company of New Jersey, and the Indian Point 2 power plant were out of operation. Con Edison apparently maintained certain gas turbines for use during hours of peak power demand which were also inoperable at the time of the blackout because the technicians who manned the turbines had been sent home earlier. In addition, it was alleged that Con Edison failed to properly maintain and inspect certain relays and circuit breakers, and failed to secure proper protection against lightning for its towers and transmission lines. Finally, plaintiff alleged that the person placed in charge of the Con Edison system on the evening of July 13, 1977, William Jurith, reacted improperly to the crisis and, further, that Con Edison was grossly negligent in placing Jurith in such a critical position while lacking the necessary experience, knowledge and expertise to completely perform the functions of his job.
 

 In response, Con Edison maintained that the Hudson-Farragut tie was out of operation because of the prior failure of a complex piece of machinery, that the Indian Point 2 plant was also justifiably out of service for repairs, and that the gas turbines were not in operation at the time of the incident because the anticipated period of peak power demand, during which the turbines were normally used, had expired earlier in the evening. Con Edison also maintained that its inspection program for circuits and relays conformed to the appropriate engineering standards and that the lightning protection on the Con Edison towers and lines was adequate and properly designed. In respect to its employee, Con Edi
 
 *172
 
 son maintained that Jurith had acted properly and did not, in any event, act with gross negligence.
 

 Before submitting the case to the jury, the trial court instructed its members that they could return a verdict for the plaintiff only if they found that defendant had been grossly negligent. As Trial Term recognized, under the terms of Con Edison’s rate schedule, the utility cannot be held liable for interruption of service due to the ordinary negligence of its agents and employees. It does, however, remain liable for gross negligence. In
 
 Weld v Postal Telegraph-Cable Co
 
 (199 NY 88, 98), this court recognized that the liability of a public utility should be limited to damages arising from the utility’s willful misconduct or gross negligence. Later, after a retrial, the court further addressed the meaning of this standard
 
 (Weld v Postal Telegraph-Cable Co.,
 
 210 NY 59). Briefly, gross negligence had been termed as the failure to exercise even slight care. In the present case, following the charge to the jury which incorporated the standard of gross negligence, the jury returned a verdict finding that the defendant had indeed been grossly negligent; that this gross negligence was the proximate cause of the plaintiff’s damage; and that plaintiff was entitled to compensation in the amount of $40,500. The Appellate Division affirmed the judgment, without opinion, and granted leave to appeal to this court.
 

 Defendant now argues, initially, that the evidence was insufficient to warrant submission of plaintiff’s case to the jury. Our review of the record indicates, however, that there was sufficient evidence of the defendant’s gross'negligence to present this issue for jury determination. It is also urged that although plaintiff attempted to detail the manner in which the blackout occurred, it never identified any standard of care from which Con Edison departed. Specifically, defendant maintains that a fatal defect in plaintiff’s case was its failure to demonstrate, by expert testimony, the sound engineering and other practices which Con Edison failed to follow.
 

 Generally, the particular standard of care which a defendant is judged against in a given case is a factual matter for the jury (Prosser, Torts [4th ed], p 207). In the ordi
 
 *173
 
 nary negligence action, the question is what a reasonable person would have done under the circumstances. Where the inquiry is to the existence or nonexistence of gross negligence, the ultimate standard of care is different, but the question nevertheless remains a matter for jury determination. In this instance, however, defendant asserts that the jury is incompetent, because of its lack of technical expertise, to discern the appropriate standard of care from the facts alone, unaided by expert testimony.
 

 It is clear that certain issues, because of their scientific or technical complexity, require the special expertise of an expert witness (see 7 Wigmore, Evidence [Chadbourn rev, 1978], § 2090). However, even assuming that the scientific or technical complexity of certain cases may necessitate the introduction of expert testimony relating to the appropriate standard of care, the alleged failure to introduce such testimony in this case is not fatal because there was ample evidence upon which the jury could have based its determination of gross negligence unaided by the guidance of expert testimony concerning the appropriate standard of behavior. Thus, by analogy, although expert testimony is ordinarily called for in medical malpractice actions, “when common sense and ordinary experience suggest that the condition [for which suit is brought] is incompatible with skillful or successful treatment”, expert testimony may not be necessary (1 NY PJI2d 393) and, indeed, where the facts can be placed before a jury, and they are of such a nature that jurors generally are just as competent to form opinions in reference to them, then there is no occasion to resort to expert or opinion evidence.
 

 In support of its contention that defendant had acted with gross negligence, plaintiff alleged and proved the existence of several circumstances under defendant’s control which could have contributed to the eventual blackout. It was well within the competence of the jury to evaluate defendant’s actions based upon the factual presentation alone. Chief among these actions was the behavior or lack of action of Con Edison’s system operator on the night of the blackout. Within seven minutes of the initial lightning bolt which struck the Con Edison system at 8:37 P.M., the New York
 
 *174
 
 Power Pool was in communication with Con. Edison’s employee, William Jurith. Under the agreement between the power pool and Con Edison, during times of major emergency the utility was to put into effect the directions of the senior pool dispatcher. Following the second lightning bolt the pool directed Jurith to reduce voltage by “shedding load”. Prior to the blackout, which occurred at approximately 9:30 P.M., several similar requests were made by the power pool to Con Edison to shed load. It was charged, with support in the record, that these directions were not complied with. The actions of Con Edison’s employees on the night of the blackout, and Con Edison’s staffing decisions, could properly be judged by the members of the jury unaided by expert testimony to clarify the standard of care.
 

 Defendant’s final contention concerns the use of a general verdict in this case. Defendant argues that the several alleged shortcomings in its procedures which plaintiff sought to prove, including Con Edison’s failure to have sufficient power sources on the night of the blackout and its ultimate handling of the evolving emergency situation, were each discrete theories of liability presented to the jury. Because not all of these discrete “theories of liability” were, according to defendant, supported by legally sufficient evidence, the rendering of a general verdict requires a new trial because it is impossible from this verdict to determine if the jury based its judgment on a theory supported by the evidence. In
 
 Davis v Caldwell
 
 (54 NY2d 176, 178 [decided herewith] ), we noted that “ [w] hen multiple theories of liability have been submitted to a jury which is instructed to return a general verdict only, a judgment entered on such a verdict in favor of the plaintiff must be reversed when the proof was insufficient for submission as to one or more of those theories.” There, the court presented the jury with five separate theories of liability and instructed the jury that although it was to decide all five of plaintiff’s claims, it was to return only one general verdict. The court further instructed the jury that if it found in favor of plaintiff on any one claim, it would award a dollar amount but would not make known on which of the claims it had found for plaintiff.
 

 
 *175
 
 In the present case, in contrast, the trial court did not present the jury with separate theories of liability for individual determination, but instead merely presented the alleged shortcomings in Con Edison’s procedures as a summary of plaintiff’s evidentiary contentions. The court then instructed the jury to determine if defendant had been grossly negligent. This presentation of plaintiff’s evidentiary contentions was effectively equivalent to a marshaling of the evidence, and we may not now disturb the jury’s determination, made on the basis of the evidence before it, that .the defendant’s gross negligence led to the damages sustained by plaintiff. Since we perceive no error in the presentation of this case to the jury, we must conclude that there should be an affirmance.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg and Meyer concur.
 

 Order affirmed.