OPINION OF THE COURT
Herbert Shapiro, J.
On the night of July 13, 1977, by reason of the gross negligence of Consolidated Edison,* the City of New York was deprived of electrical power to a point where the City was plunged into darkness. During the blackout, the plaintiff’s supermarket in the South Bronx was looted and vandalized. The instant action was commenced by the plaintiff seeking to recover damages for the value of the merchandise and fixtures stolen or vandalized. Other items of damage were sought as well but need not be detailed for purposes of this opinion.
Trial was commenced and the thrust of plaintiff’s case was *630 that as a result of the gross negligence on the part of Consolidated Edison (Con Ed) in causing the blackout, certain conditions were created in the community which led to the looting and vandalism of plaintiffs supermarket. In support of such position plaintiff introduced expert testimony tending to show that in a lower socioeconomic area such as was claimed to be here involved, a blackout such as occurred on July 13, 1977 would have certain adverse effects on the behavior of the people in that community. The expert testified that because of the absence of street lights, traffic lights, building lights, and the general sense of confusion and disorder that followed, the looting, vandalism and other antisocial activities occurred.
A number of lawsuits had been brought against Con Edison in which recoveries were upheld for food spoilage resulting from the loss of refrigeration due to the absence of electrical power (e.g., Food Pageant v Consolidated Edison Co., 54 NY2d 167). As a result of Food Pageant and the cases which followed it there is no question but that Con Ed would be liable to this plaintiff if the damages sought to be recovered arose directly out of the failure to supply electricity to the plaintiff’s premises causing damage to foodstuffs. However, that is not the claim of this plaintiff. Plaintiff asserts that it sustained damages by reason of the fact that its equipment and merchandise were vandalized and stolen by the looters who roamed the darkened streets. Food Pageant, unfortunately, does not supply the answer to the question of whether Con Ed may be held liable in such circumstances.
While there have not yet been any appellate decisions treating with the question here presented there have been decisions which point the way to the determination here to be made. In some cases complaints have been sustained and in others dismissed where plaintiffs sought to recover for personal injuries sustained during the blackout. The Court of Appeals in Strauss v Belle Realty Co. (65 NY2d 399) recently settled the law applicable to those cases.
In Strauss (supra) the plaintiff sustained personal injuries when he fell in the blackout-darkened basement of the apartment building in which he resided. In addition to seeking damages from the landlord, Strauss sued Con Ed on the theory that the latter’s gross negligence caused the "blackout” and his fall.
In its opinion in Strauss (supra, p 402) the Court of Appeals stated that the "essential question here is whether Con Edison *631 owed a duty to plaintiff * * * with whom there was no contractual relationship for lighting in the building’s common areas.” Based on the facts there present the Court of Appeals affirmed the dismissal of the complaint concluding that there was no such contractual relationship and therefore no duty owed to the injured plaintiff.
Was there a contractual relationship in the instant case between the plaintiff and Con Ed so as to create the requisite duty? The court concludes that there was not, and that the complaint must be dismissed.
True, it may be argued that there was indeed a contractual relationship between plaintiff and Con Ed in that plaintiff was a customer for the supply of electricity to the plaintiff’s market. However, the thrust of the plaintiff’s case was directed, not to the failure to supply electricity to the market, but rather to the failure to supply electricity to the City, in general, including street lights and traffic lights — all of which led to the looting and vandalism of plaintiff’s premises. That such is the case is supported by the plaintiff’s over-all. presentation and, more particularly, by the production of the expert witness who testified as to the impact of the City-wide blackout on social behavior.
So, while Mr. Strauss was also a customer of Con Ed with respect to the furnishing of electricity to his apartment — as was the plaintiff with respect to the market premises — neither of them had a contractual relationship with Con Ed with respect to the street lights, traffic lights, etc.; the loss of function of which caused their damage. As the Court of Appeals concluded that the fall of Strauss was not caused by the failure to supply electricity to his apartment, so too must it be concluded that the looting and vandalism that took place in plaintiff’s market was not caused by the failure to supply electricity to the market premises. Rather, as indicated, it was due to the general "blackout” condition of the streets and the City in general.
Strauss (supra, p 405) is also informative with respect to the attitude of the Court of Appeals concerning the impact of imposing broad and unrestricted liability upon Con Ed. The majority opinion makes it clear that considerations of placing "controllable limits on liability” and the "societal consequences of rampant liability” are not without weight in reaching determinations in cases of this type (see also, Crane v City of New York, 65 NY2d 859).
*632 Plaintiffs reliance upon Koch v Consolidated Edison Co. (62 NY2d 548) is misplaced. While it is true that the court there made the general statement that damages resulting from "blackout” looting and vandalism were recoverable, it was — as demonstrated by explicit language of Strauss — only intended to apply to entities which had the requisite "contractual relationship” with Con Ed. The plaintiffs in Koch were all public benefit corporations — in a sense a part of the City government with which Con Ed clearly had a contractual relationship and a duty to supply electricity for their general purposes. As indicated in the Koch opinion (supra, p 559) wherein Moch Co. v Rensselaer Water Co. (247 NY 160) was distinguished, the controlling factor was the fact that the "operative contract [did not] provide that the service was to be rendered other than for the contracting party, city or authority.” That the "governmental” plaintiffs in Koch are in a class to be treated differently than the members of the public such as the instant plaintiff is amply supported by the holding in Strauss (65 NY2d 399, supra).
Accordingly, the complaint is dismissed.

 By reason of the decision of the Court of Appeals in Food Pageant v Consolidated Edison Co. (54 NY2d 167), the utility has been precluded from denying it was guilty of such conduct.