OPINION OF THE COURT
George B. Ceresia, Jr., J.
At issue in these three combined CPLR article 78 proceedings is a May 29, 1997 determination of the Public Service Commission (PSC) concerning New York Telephone’s (NY Tel) mass announcement services (MAS), a service utilized by many different information providers (IPs) to offer to the public recorded information messages accessed by calling the specific *303 “976” number assigned to the IP (see, PSC Opn No. 97-7). The “976” recorded messages of approximately one minute’s duration offer information regarding weather, time, financial news, horoscopes, lottery results, sports and entertainment, inter alia. Calls to “976” exchanges incur a fixed charge (40 cents at the time of the determination), and the per-call revenues are collected by NY Tel and divided equally between NY Tel and the IP called, pursuant to the governing tariff filed with the PSC. NY Tel is required to provide billing and collection services to the IPs for “976” calls, and to tabulate call volumes or counts for each IP. These numbers provide the basis for NY Tel’s tariff-based obligation to pay the IPs for each completed call billed and collected.
From 1984 to 1990, NY Tel used a system called Autrax or Audiochron to tabulate the “976” call volumes for purposes of paying the IPs. The Autrax system experienced call counting errors on a regular basis, requiring NY Tel employees to manually “adjust” the call counts. In 1990, NY Tel transferred or “cutover” the “976” calls to the Ericsson Switch to tabulate “976” calls. The cutover was attended by a variety of problems. For clarification, the original system is referred to as the precutover Autrax system, and the replacement system is called the Ericsson postcutover system.
After the cutover to the Ericsson Switch, various IPs complained to the PSC that the new switch was not completing or counting all calls with the result that their call counts dropped significantly from their precutover call counts, causing them to lose revenues and business. They sought compensation from NY Tel in amounts which ranged up to $15.6 million for these claimed losses. The IPs also raised many other complaints concerning “976” service, including dissatisfaction with compensation levels and allocation of revenues, system reliability and shortcomings, and inaccuracies in call counting. The IPs suggested alternatives to enable them to offer their services more competitively in view of emerging competition from other types of information providers. Many of the IPs’ concerns were addressed by NY Tel or by prior PSC proceedings, but many more remained to be resolved.
By order instituting proceeding (May 29, 1993), the PSC commenced an omnibus proceeding to address in a single consolidated proceeding all issues not already resolved relating to “976” MAS service including rates, charges, rules and regulations. Interested members of the industry were invited to participate, and were encouraged to develop alternative ap *304 proaches and mutually acceptable resolutions of the issues. By opinion and order concerning MAS, the PSC approved, in part, a joint proposal filed by NY Tel and 12 IPs to resolve many of the issues in contention (see, 34 PSC 905 [Opn No. 94-14] [opinion and order concerning MAS], on reconsideration, mod in part PSC Opn No. 95-10). Pursuant to the Administrative Law Judge’s subsequent procedural ruling, MAS-related issues not resolved by the approved joint proposal were to be addressed in Phase II of these proceedings. Extensive hearings and motion practice were conducted during 1996 in Phase II resulting in a record of over 5,000 pages and 175 exhibits. During the hearings, as the evidence and testimony developed, the scope of the inquiry expanded considerably from the harm the IPs claimed due to NY Tel’s misconduct related to the cutover to the Ericsson Switch and NY Tel’s liability therefor, to include NY Tel’s recently revealed conduct in manually adjusting the erroneous precutover Autrax call counts and concealment of these adjustments, and the IPs’ entitlement to compensation for Autrax call counting problems.
The Administrative Law Judge issued a comprehensive recommended decision of 189 pages on January 17, 1997. As pertinent to this special proceeding and detailed infra, the Administrative Law Judge found that NY Tel had been grossly negligent and had engaged in willful misconduct in connection with the September 1990 installation and cutover to the new Ericsson Switch used to provide “976” service to the IPs. The mishandling of the cutover caused the IPs to lose a large volume of calls and, consequently, customers. While recognizing that the PSC has no authority to award conventional negligence damages and that NY Tel’s liability to the IPs under the governing tariff is limited in a court action to gross negligence/ willful misconduct, the Administrative Law Judge recommended that the IPs be awarded “refunds” from NY Tel totaling $25.2 million, which took into consideration the harm suffered by the IPs due to NY Tel’s defective service. The Administrative Law Judge determined that the Ericsson Switch was not a suitable vehicle for counting “976” calls and set forth a new call counting procedure for NY Tel to follow until the switch was properly replaced.
The PSC essentially adopted the findings and recommendations of the Administrative Law Judge with a few exceptions, as relevant herein (see, PSC Opn No. 97-7). The PSC agreed with the Administrative Law Judge’s finding concerning NY Tel’s conduct both before and after the cutover, and with the *305 conclusion that NY Tel committed gross negligence and engaged in deliberate misconduct in connection with the 1990 transfer of “976” service to the Ericsson Switch (id., at 8-9, nn 1, 15).
NY Tel and several IPs thereafter instituted three separate article 78 proceedings challenging various aspects of the PSC’s May 29, 1997 determination. These proceedings were consolidated by order of October 24, 1997.
I. The PSC’s Gross Negligence/Willful Misconduct Declaration
NY Tel’s first cause of action alleges that the PSC’s declaration that it was guilty of “gross negligence” and “willful misconduct” in connection with the Ericsson Switch cutover is in excess of the PSC’s statutorily conferred jurisdiction, because this finding is relevant only to the issue of damages, i.e., NY Tel’s liability to the IPs, which the PSC lacks the power to award. Thus, NY Tel contends the PSC lacks the authority to make a declaratory finding relevant solely to the issue of damages under the applicable tariff. The PSC refutes this contention arguing that it has jurisdiction to make findings of fact on liability provisions in the tariffs it approves and supervises when such findings are made in connection with its statutory authority to regulate rates, terms and utility services. Likewise, the IPs argue that the PSC finding on liability falls within its authorized powers to investigate complaints, assure safe and adequate service, oversee telephone utilities’ conduct and operations, impose penalties and take corrective action, and issue related findings.
The court’s initial analysis must focus on the context in which the gross negligence/willful misconduct issue was raised before the PSC and in which that finding was made by the Administrative Law Judge and PSC, and its relevance, if any, to issues other than damages. The PSC instituted this omnibus proceeding to address myriad complaints filed by IPs. These complaints generally related to dissatisfaction with compensation levels, alleged system shortcomings and inaccuracies in call counting. The PSC in its order instituting proceedings directed the convening of interested members of the MAS industry “to consider the rates, charges, rules and regulations affecting the [MAS] portion of the information provisioning industry in New York Telephone’s service territory”. In the proceedings Phase I, NY Tel and 12 IPs negotiated a joint proposal resolving some points of contention, which was approved *306 (see, 34 PSC 905 [Opn No. 94-14]).[1] Meanwhile, Phase II was commenced for consideration of MAS-related issues not covered by the joint proposal. Voluminous discovery, extensive hearings and motion practice ensued. The Administrative Law Judge issued a procedural ruling outlining the issues remaining for administrative resolution, and they included NY Tel’s “liability, if any, to ‘976’ providers due to its handling of the cut-over to the Ericsson Switch”, as well as the accuracy of past and current call counts. NY Tel’s liability for damages arising from its errors, omissions, interruptions or delays in providing services to subscribers (IPs) was, of course, limited under the applicable tariff to “gross negligence” and “willful misconduct”, aside from certain specified interruption allowances. In the recommended decision on Phase II, the Administrative Law Judge indicated that the “main issue” of Phase II was whether NY Tel has an “obligation to compensate” the IPs for call account errors after[2] the cutover to the Ericsson Switch. The IPs raised three basic areas of misconduct: (1) inaccuracy and deception by NY Tel in the precutover Autrax call counts; (2) NY Tel’s gross negligence and misconduct in handling the Ericsson Switch cutover and cover-up, for which the IPs sought monetary compensation; and (3) litigation abuses and fraudulent conduct by NY Tel in front of the PSC. The Administrative Law Judge then reviewed the parties’ claims and the hearing record regarding the pre- and postcutover call account inaccuracies, NY Tel’s related conduct, and its impact on the IPs. The parties agreed that under the governing tariff the threshold for NY Tel’s liability is gross negligence and willful misconduct, but NY Tel maintained that any claim for damages must be brought in court as the PSC could not award damages. The IPs asserted that the PSC could, under the tariff, direct NY Tel to compensate them for their financial loss due to NY Tel’s gross negligence or willful misconduct in failing to competently provide service under the tariff.
After reviewing the extensive record and the parties’ contentions regarding the availability and propriety of any tariff-based remedy from the PSC, the Administrative Law Judge issued findings that NY Tel had been “guilty of gross negligence and willful misconduct”, summarized as follows: “The company’s long-term deception of both IP’s and the Commission *307 concerning its unauthorized Autrax call count adjustments was willful misconduct. The company was seriously negligent in pushing ahead with the Ericsson cutover in one gulp, rather than phasing it in, which would have enabled it to deal more efficaciously with the problems and avert serious harm to IP’s. The unexpected troubles that did attend the cutover show that the company’s planning for it was inadequate. Likewise inadequate was the company’s handling of the troubles when they arose, further evidencing insufficient preparation. These basic elements of the cutover picture, taken together, constituted gross negligence. Furthermore, the company engaged in willful misconduct in striving to cover up its negligence and to defeat efforts to call it to account. This extended to willful misconduct in the company’s litigation of this proceeding. I also conclude that the IP’s were in fact harmed by the improper, deceitful and grossly negligent way in which New York Telephone provided service to them” (emphasis added).
Thereafter, the Administrative Law Judge made detailed findings on the “main issue”, and addressed itself to the Autrax call counts, the cutover and current call count accuracy, concluding the Ericsson Switch “is not a suitable vehicle for counting 976 calls for purposes of payments to IP’s”. The Administrative Law Judge imposed upon NY Tel the obligation to adopt the IP-proposed alternative or to propose one itself, and to notify the IPs each time that mechanically derived call counts are unavailable or corrupted and to set forth the details of any adjustments made. This burden was imposed by the Administrative Law Judge on NY Tel in light of the record in these proceedings demonstrating its “long pattern of deceptive behavior * * * with respect to IP call counts”, indicating this burden could be removed if NY Tel timely replaced the Ericsson Switch with one which more accurately counts “976” calls. The Administrative Law Judge ultimately determined to order “refunds” to the IPs, an “equitable remedy”, recognizing the PSC could not award conventional negligence damages. The Administrative Law Judge then addressed the remaining issues.
The PSC agreed with and adopted the findings and conclusions of gross negligence and willful misconduct concerning NY Tel’s conduct in connection with the cutover to the Ericsson Switch, finding the Administrative Law Judge’s outline of the evidence of NY Tel’s gross negligence/willful misconduct “with only very limited exceptions * * * accurately reflect [ed] what happened, both before and after the cutover, and fairly assigns *308 responsibility for the post-cutover operating problems suffered by the IPs” (PSC Opn No. 97-7, at 10, n 10). Nonetheless, the PSC concluded that the proposed “refunds” to IPs amounted to an improper award of damages {id., at 9-10). As relevant to this special proceeding, the PSC agreed with several recommendations for prospective changes to “976” service and approved NY Tel’s proposed alternative to the Ericsson Switch {id., at 12-14, 15, 3).
The issue raised by NY Tel which befalls this court in this special proceeding is whether the PSC’s declaration of gross negligence/willful misconduct is in excess of that agency’s jurisdiction and power. This raises two issues: whether the declaration relates solely to the issue of NY Tel’s liability to the IPs under the tariff for harm suffered from the call count errors and, if so, whether the PSC has the authority to issue a declaration on tariff-based liability (i.e., finding NY Tel was grossly negligent and engaged in willful misconduct) even though the PSC is not authorized to award monetary damages which the IPs must pursue in a court action. The second issue appears to be a novel one in this State as the parties have not cited (and the court has not discovered) any case in which a court has spoken to the PSC’s jurisdiction to issue such a declaration. To clarify, the parties concede the PSC’s lack of power to award monetary damages or even refunds in this case.
The PSC, it is well established, possesses only those powers expressly delegated to it by the Legislature, or incidental to its expressed powers, together with those required by necessary implication to enable it to fulfill its statutory mandate (Matter of Niagara Mohawk Power Corp. v Public Serv. Commn., 69 NY2d 365, 368-369). Aside from its mandate to assure just and reasonable rates and adequate service (Public Service Law § 91), the PSC also has general supervisory power over telephone lines and corporations within its jurisdiction (Public Service Law § 94) and has broad investigative and oversight authority to do so (Public Service Law §§ 95-98). In determining whether the PSC has acted outside the scope of its legislatively conferred power, the courts of this State have engaged in “a realistic appraisal of the particular situation to determine whether the administrative action reasonably promotes or transgresses the pronounced legislative judgment” (Matter of Consolidated Edison Co. v Public Serv. Commn., 47 NY2d 94, 102; Matter of Niagara Mohawk Power Corp. v Public Serv. Commn., supra, at 372).
As this court reads PSC Opn No. 97-7 and the Administrative Law Judge’s recommended decision, the findings of NY *309 Tel’s gross negligence and willful misconduct do not relate solely to the issue of NY Tel’s liability for damages to the IPs. A “realistic appraisal” of PSC’s declaration is that it was properly made in the context of its power to review and investigate complaints regarding a regulated utility’s service, conduct and tariff-based charges, as well as its general oversight and regulation of this telephone “976” service sub-industry. The declaration is inseparable from numerous prospective and remedial measures related to “976” service which the PSC adopted, not the least of which are (1) foremost, the determination that the Ericsson Switch is not viable and requires switching to an alternative counting system and notification to IPs of each system failure until then (PSC Opn No. 97-7, at 12-14, 15, if 3); and (2) by way of example, the unbundling and unfair competition declarations {id., at 12-13, 15, U 4). Further, the declaration explicitly concerns the “responsibility for the post-cutover operating problems suffered by the IPs” {id., at 10, n 10 [emphasis added]). The findings resolved the IPs’ complaints levied against NY Tel at which the hearings were directed and channeled the agency’s oversight and prospective regulation of this entire “976” service industry {see, State Administrative Procedure Act § 204). It was also relevant to the issue of NY Tel’s credibility.
Thus, the court concludes that the PSC’s gross negligence/ willful misconduct declaration challenged by NY Tel (PSC Opn No. 97-7, at 15, 1f 1) does not, in fact, relate solely to NY Tel’s liability to the IPs for damages due to the cutover problems and call count inaccuracies or cover-up. Accordingly, the request to annul that declaration as in excess of the PSC’s jurisdiction and authority is denied and NY Tel’s first cause of action is dismissed.
Having concluded that the PSC has authority to issue the declaration — and in fact issued the declaration — on an issue other than NY Tel’s liability for damages, this court has no basis in this special proceeding to annul the declaration merely on the grounds that it may have an effect on an eventual IP action for damages.
NY Tel further contends that the PSC’s declaration of gross negligence/willful misconduct was arbitrary and capricious in that the Administrative Law Judge and PSC failed to apply the appropriate legal standard for this tariff-based finding, and instead applied a “more stringent” standard to NY Tel’s conduct in rendering utility services. For the most part, NY Tel’s claims are addressed to the Administrative Law *310 Judge’s discussion of NY Tel’s conduct on the issue of whether NY Tel is liable for damages or “refunds” to the IPs, which the PSC rejected (PSC Opn No. 97-7). Thus, the PSC did not, in fact, “award damages” utilizing an incorrect legal standard.
To the extent that the PSC adopted the findings as to NY Tel’s conduct related to the cutover (and unrelated to the issue of damages or liability), the court finds no error. The Administrative Law Judge eschewed imposing “strict liability” on NY Tel for its misconduct related to the cutover and instead noted that NY Tel was simply required to “handle the situation responsibly; acknowledge its lapse; act responsibly to undo the damage; make amends; and take steps to forestall its repetition”, all of which NY Tel failed to do. The Administrative Law Judge summarized his findings saying “the company not only failed to act expeditiously to clean [its mistakes] up, but instead focused its efforts on covering it up”. The Administrative Law Judge then proceeded to detail NY Tel’s inadequate planning for the cutover, the mistakes made in executing the cutover, NY Tel’s failure to respond adequately to the service problems or to notify the IPs; and NY Tel’s disregard for the consequences of its handling of the cutover. NY Tel did not possess “any concern” for the consequences of its conduct and engaged in willful misconduct in endeavoring to cover up the problems and avoid responsibility.
Read as a whole, the Administrative Law Judge’s decision properly employed the governing legal standard for gross negligence/willful misconduct, i.e., “conduct that evinces a reckless disregard for the rights of others or ‘smacks’ of intentional wrongdoing” (Colnaghi, U.S.A. v Jewelers Protection Servs., 81 NY2d 821, 823-824; Sommer v Federal Signal Corp., 79 NY2d 540, 554-555). The PSC’s finding did not improperly rest on a mere series of mistakes by NY Tel or on its simple negligence (cf. American Tel. & Tel. Co. v City of New York, 83 F3d 549, 556 [2d Cir 1996]), and did not focus on the harm to the IPs, although this was considered. While the Administrative Law Judge found that NY Tel had engaged in “some” planning and corrective action — although wholly inadequate and with “disregard for the consequences of its errors” — this did not compel a finding that NY Tel engaged in “slight care” or “slight diligence” (see, Food Pageant v Consolidated Edison Co., 54 NY2d 167, 172).
The Administrative Law Judge noted that the unique problems and potential for harm inherent in the “976” service industry was not tantamount to imposing a “heightened stan *311 dard of care” on NY Tel, but rather must be read in the context of the evaluation of the adequacy of NY Tel’s planning and the reasonableness of its response. Finally, the court has no difficulty in concluding, upon a review of the pertinent portions of the hearing record and the Administrative Law Judge’s detailed and extensive factual findings as adopted by the PSC, that the finding of gross negligence/willful misconduct had an ample factual basis, is supported by the record and should be confirmed.
[Portions of opinion omitted for purposes of publication.]

. The petition for reconsideration was denied with clarifications (see, PSC Opn No. 95-10).

. Only Black Radio Network and the Ad Hoc Committee of Independent Information Providers put forth a claim for precutover call account errors.