456 B.R. 178 (2011)
In re John McCLELLAND, Debtor.
John McClelland, Plaintiff/Appellant,
v.
Grubb & Ellis Consulting Services Company, Grubb & Ellis Valuation and Advisory Group and Grubb & Ellis New York, Inc., Defendants/Appellees.
No. 09-CV-9515 (BSJ).
United States District Court, S.D. New York.
June 24, 2011.
*179 Leonard I. Spielberg, Harold, Salant, Strassfield & Spielberg, White Plains, NY, for Appellant.
Lance Newman Portman, McCabe & Mack LLP, Poughkeepsie, NY, for Appellees.

Memorandum & Order
BARBARA S. JONES, District Judge.
Before the Court is an appeal by Plaintiff/Appellant John McClelland of the ruling of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") granting the motion for judgment on the pleadings of Defendants/Appellees Grubb & Ellis et. al. For the reasons stated below, the decision of the Bankruptcy Court is AFFIRMED in part and REVERSED in part.

Background
Plaintiff/Appellant McClelland brings this appeal of the October 16, 2009 order of the Honorable Cecelia G. Morris, Bankruptcy Judge in the Southern District of New York. Plaintiff is a Chapter 11 Debtor, having filed his voluntary Chapter 11 petition on December 19, 2003. (Pl. Br. at 5.) Defendants are real estate services firms, providing consulting, valuation and representation to clients on real estate issues. (Compl. ¶ 2.)
This dispute stems from several long-standing litigations regarding real properties *180 owned jointly by McClelland and Frank and Anthony Longhitano, non-parties to the present action. McClelland and the Longhitano Brothers were partners in owning various real estate holdings; the Longhitanos were also creditors of McClelland. (Compl. ¶ 4.) In 2004, McClelland reached a settlement with the Longhitano brothers, which was approved by the Bankruptcy Court. (Pl. Br. at 8.) As part of the settlement, Grubb & Ellis was retained to provide appraisals of these jointly-owned properties. (Compl. ¶ 4.) Under their agreement, Plaintiff was required to sell his one-third interest in the properties to the Longhitanos for the appraised values as determined by Grubb & Ellis. (Complaint ¶¶ 3-4.) By the terms of the Stipulation of Settlement, "the appraisal shall be binding and conclusive upon the parties." (D. No. 29 at Exhibit A at ¶ 12.)
On September 10, 2004, the Longhitanos and McClelland signed an engagement letter with Robert Von Ancken, Executive Managing Director at Grubb & Ellis. (Compl. ¶ 5 and Exhibit A to the Complaint.) This letter described the services to be performed by Grubb & Ellis as appraiser. Defendants were paid "to determine the fair market value of each property as of July 29, 2004, by considering their highest and best use." (Compl. ¶ 8.)
The letter set forth the obligations of both all parties. In relevant part, it stated that "We will use the income approach, the comparable sales approach and the replacement value approach, as we deem each approach appropriate, in determining the fair market value of each property." (Complaint, Ex. A Engagement Letter dated September 10, 2004.) The letter further pledged that the analysis and valuation would be conducted in accordance with ethical, legal and professional appraisal standards. (Compl. Ex. A Engagement Letter dated September 10, 2004.) The letter finally included a provision to limit Grubb & Ellis' liability for any claim made against it related to the appraisals, providing that "the maximum damage recoverable from [Grubb & Ellis] other than for fraud or intentionally wrongful acts shall be the amounts of the monies collected by Grubb & Ellis for this assignment and under no circumstances shall any claim for consequential damages be made." (Compl., Ex. A Engagement Letter dated September 10, 2004.)
Plaintiff alleges that Grubb & Ellis were aware that Plaintiff "would be relying on the defendants' appraised values of the properties" in executing the settlement agreement. (Compl. ¶ 6.) Plaintiff further asserts that Defendants had a "legal and equitable duty, independent of any contractual obligation, to make a true and fair appraisal of the properties." (Compl. ¶ 7.)
Grubb & Ellis appraised approximately sixteen properties that were owned by the partnership, including apartment complexes, townhouses, commercial space, and vacant land. (Compl, Ex. A Engagement Letter dated September 10, 2004, Schedule A.)
One of the properties appraised by Grubb and Ellis was the Hudson Valley Landing property, which consisted of 33 two-family homes, each with its own fee simple parcel of land. (Compl. ¶ 10.) Each home included two duplexes with two bedrooms each. (Compl. ¶¶ 11-12.) At the time of the appraisal, all of the two bedroom duplexes in the Hudson Valley Landing property were being managed as rental units. (Compl. ¶ 12.)
Grubb & Ellis submitted its appraisal report on January 27, 2005. Regarding the Hudson Valley property, Grubb & Ellis concluded that the existing rental use of the property was its highest and best use. (Compl. ¶ 13.)
*181 Plaintiff alleges that the report was deficient and incorrect in numerous respects in its appraisal of the Hudson Valley property. Plaintiff primarily contends that the report did not provide adequate "support and rationale" for its conclusion that the highest and best use of the property was as rental units, rather than offering the 33 individual two-family units for sale. (Compl. ¶¶ 15-22, 29.) Grubb and Ellis allegedly failed to set forth any opinion as to the value of the property as individually sold units. (Compl. ¶ 15.) In support of his allegations, Plaintiff compares the Hudson Valley Landing units to a nearby partnership property, the Rondout Landing. Plaintiff contends that the Defendants concluded that the highest and best use of the Rondout Landing property was as individually sold units rather than a rental complex. Plaintiff contends that the two properties are substantially similar, and that this demonstrates that Defendants "ignored its own market evidence" in appraising the Hudson Valley Landing property. These errors allegedly cost Plaintiff approximately $1 million. (Compl. ¶¶ 18-22.)
Plaintiff McClelland further alleges that these failures constituted violations of the Uniform Standards of Professional Appraisal Practice, known as "USPAP." (Compl. ¶¶ 15-16.) He also emphasizes that he alerted Grubb & Ellis to the mistakes in the appraisal of the Hudson Valley property, but "defendants refused [to correct the errors] and consciously disregarded the consequence of its action." (Compl. ¶ 32.)
On these grounds, Plaintiff objected to the report in Bankruptcy Court, contesting the fee application of Grubb & Ellis. (Compl. ¶ 23.) He additionally sought to pursue the causes of action underlying this appeal as a counter-claim to Grubb & Ellis' fee application in Bankruptcy Court, but Judge Morris denied this request. Judge Morris granted Grubb & Ellis' application for final compensation and accepted the appraisal report over Plaintiffs objection. (Compl. ¶ 23, Pl. Br. at 10.)
Plaintiff, in his individual capacity and not as debtor, subsequently filed suit against Grubb & Ellis in New York State Supreme Court. The case was then removed to the Bankruptcy Court by Defendants. (Pl. Br. at 5.) On October 22, 2009, Judge Morris issued an order granting Defendants' motion for judgment on the pleadings and dismissing Plaintiffs complaint. McClelland v. Grubb & Ellis Consulting Services Co. et al. (In re McClelland), 418 B.R. 61 (Bankr.S.D.N.Y.2009).
Plaintiff now appeals that decision, and "submits that the Bankruptcy Court both overlooked material factual allegations of negligence and intruded upon the province of the jury in deciding whether the allegations of negligence ... satisfy the requisite proof for a finding of gross negligence." (Pl. Br. at 5.) Plaintiff also asserts that the Bankruptcy Court failed to properly apply the plausibility standard and as a result improperly dismissed Plaintiffs claim. (Pl. Br. at 8.)

Legal Standard
A district court has appellate jurisdiction over the rulings of a bankruptcy court. This Court may affirm, modify or reverse the order, decree, or judgment of the Bankruptcy Court. Fed. R. Bankr.P. 8001(a), 8013. While the factual findings of a bankruptcy judge are reviewed only for clear error, legal conclusions of a bankruptcy judge are reviewed de novo. In re Olsen, 2008 WL 4298586 at *2 (S.D.N.Y. September 19, 2008). The bankruptcy court's grant of judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is reviewed de novo. Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir.2009).
*182 A motion for judgment on the pleadings is evaluated using the same standard applicable to dismissals under Rule 12(b)(6), accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the non-moving party. Id. at 43-44. To withstand a motion for judgment on the pleadings, McClelland's complaint must contain sufficient factual allegations to state a claim that is plausible on its face. Id. at 44 (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

Legal Analysis
As a preliminary matter, in deciding Defendant's motion Judge Morris relied on the allegations in the complaint as well as the settlement agreement between Plaintiff and the Longhitanos and the engagement letter with Grubb & Ellis. In re McClelland, 418 B.R. at 68-70. The Court agrees that because these documents were expressly referenced in the complaint, they were properly considered in deciding the motion. Id. (quoting Sira v. Morton, 380 F.3d 57 (2d Cir.2004) ("a complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint."))
The Bankruptcy Court also analogized Defendants' role as appraiser appointed and overseen by the Bankruptcy Court to that of Bankruptcy Trustee. 418 B.R. at 68. The Bankruptcy Court found that Defendants' potential liability should be assessed in the same manner as the Court would assess the liability of the trustee. As a result, Judge Morris reasoned that because a trustee can only be liable for intentional or negligent misconduct, Defendants should be afforded the same protections; like a trustee, Defendants cannot be found liable for objectively reasonable mistakes in judgment where discretion is permitted. Id. Plaintiff does not dispute this finding, but it is not necessary to assess Plaintiffs claims, which solely plead intentional misconduct and gross negligence.

1. First Cause of Action: Fraudulent Misrepresentation
Plaintiff's first cause of action alleges that Defendants made a "fraudulent and deceitful misrepresentation as to the highest and best use of the Hudson Valley Landing" property in their appraisal report. 418 B.R. at 71.
As an initial matter, Appellant McClelland appears to have abandoned this cause of action in his brief to this Court. While McClelland does not explicitly state that he no longer intends to pursue a claim for fraudulent misrepresentation, he offers no argument in support of this cause of action. (See PI. Br. at 13-15.) Rather, his brief focuses exclusively on his second, third and fourth causes of action.
Even if Plaintiff intended to continue this claim, the Court finds that the Bankruptcy Court correctly dismissed Plaintiffs first cause of action. Fraudulent misrepresentation has four elements under New York law: 1) a materially false representation by a defendant, 2) made with intent to defraud the plaintiff, 3) upon which the plaintiff reasonably relied, and 4) causing damages to plaintiff. Carvel v. Ross, 2011 WL 856283 at *22 (S.D.N.Y. Feb. 16, 2011). The allegations plead in support of this claim fail to sufficiently specify any misrepresentation and instead seem to simply reallege Plaintiffs claim that Defendants were grossly negligent in their appraisal of the Hudson Valley property. Further, .Plaintiff essentially admits that he did not detrimentally rely on any materially false representation by Defendants. He never asserts that he actually was misled by the report's conclusions. Rather, he contested the veracity of the *183 representation as soon as the report was issued. For these reasons, the Bankruptcy Court was correct in dismissing Plaintiffs claim for fraudulent misrepresentation.

2. Second and Third Causes of Action: Willful Wrongdoing and Gross Negligence in Appraisal of Hudson Valley Landing Properties
Plaintiff next alleges that Defendants' erroneous appraisal of the Hudson Valley Landing property and refusal "to correct the wrongful methodology used" constituted intentional wrongdoing and/or gross negligence.
In support of these claims. Plaintiff alleges that Defendants "intentionally and wrongfully concluded that the highest and best use of the Hudson Valley Landing was as rental units instead of saleable duplexes, knowing that this would result in a lower appraisal value." (Compl. ¶ 32.)
Plaintiff contrasts the appraisal of the Hudson Valley property to that of the Rondout Landing property, which was appraised as individually sold apartments for $60,000 more per unit than the Hudson Valley units. Plaintiff claims that because the properties were substantially similar and both previously managed as rental units, the discrepancy in their appraised values demonstrates that "defendants ignored its own market evidence" and caused Plaintiff to incur substantial losses. (Compl. ¶¶ 17-22.)
Further, Defendants allegedly violated the USPAP standards governing the conduct of appraisers by failing to provide support and rationale for their conclusion regarding the Hudson Valley property's value. (Compl. ¶¶ 15, 16, 32.) Plaintiff next alleges that when it alerted Grubb & Ellis to these methodological errors, Grubb & Ellis "refused [to correct the mistakes] and disregarded the consequences" to Plaintiff. (Pl. Br. at 19.) He asserts that this refusal demonstrates a conscious disregard of Plaintiff's rights by Grubb & Ellis.
In his appeal to this Court, Plaintiff argues that the Bankruptcy Court did not properly apply the plausibility standard set forth by the Supreme Court in Bell Atlantic Corporation, et. al. v. William Twombly, et. al, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Under Twombly, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S.Ct. 1955 (internal quotation marks and citation omitted). A pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. Id. at 555 n. 3, 127 S.Ct. 1955 (alteration in original) (internal quotation marks and citation omitted). A plaintiff must, however, assert "enough facts to state a claim to relief that is plausible on its face." Id. at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1940. The Second Circuit has made clear that though Iqbal and Twombly do not "heighten the pleading requirements" for a plaintiff, they do "require factual amplification where needed to render a claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir.2010).
Therefore, to sustain the second and third causes of action, Plaintiff must plead facts allowing a fact finder to plausibly conclude that Defendants' conduct was intentional and/or "evinces a reckless disregard for the rights of other or `smacks' of intentional wrongdoing." Colnaghi, U.S.A., Ltd. v. Jewelers Protection Ser-vices, *184 Ltd., 81 N.Y.2d 821, 823, 595 N.Y.S.2d 381, 611 N.E.2d 282 (N.Y.1993). Courts are often reluctant to dismiss such claims as a matter of law, for "where the inquiry is to the existence or nonexistence of gross negligence, the ultimate standard of care is different [from ordinary negligence], but the question nevertheless remains a matter for jury determination." Food Pageant, Inc. v. Consolidated Edison Co., Inc., 54 N.Y.2d 167, 173, 445 N.Y.S.2d 60, 429 N.E.2d 738 (1981). Courts have found claims plausible where a plaintiff alleges conduct of an aggravated nature or conduct demonstrating a failure to exercise a minimal amount of care. Additionally, courts have often found gross negligence where a defendant failed to act with care despite an awareness of the detrimental consequences of such action. See, e.g., Food Pageant, 54 N.Y.2d at 173, 445 N.Y.S.2d 60, 429 N.E.2d 738 (court upheld jury verdict that the failure of Con Edison employees' to follow directions that could have avoided major blackout constituted grossly negligent conduct); Foxley v. Sotheby's Inc., 893 F.Supp. 1224, 1237 (S.D.N.Y.1995) (claim for gross negligence adequately plead where painting was appraised as authentic despite being warned of likely inauthenticity); Internationale Nederlanden (U.S.) Capital Corp. v. Bankers Trust Co., 261 A.D.2d 117, 122, 689 N.Y.S.2d 455, 459-60 (1st Dep't 1999) (failure to mail important document stated claim for gross negligence where defendant was aware that "millions of dollars were at stake"); Rand & Paseka Mfg. Co., Inc. v. Holmes Protection Inc., 130 A.D.2d 429, 430-31, 515 N.Y.S.2d 468, 469-70 (1st Dept.1987) (upholding jury's verdict of gross negligence where security company's failure to keep accurate records led to robbery).
Given the sparse allegations put forth in the complaint, this is a "close case" as to whether Plaintiff has adequately plead claims of gross negligence and intentional wrongdoing. But for the allegation that Plaintiff alerted Defendants to errors in the report and Defendants still refused to reconsider the appraisal of the Hudson Valley property or provide a sufficient analysis for its conclusion, Plaintiffs claim would likely fail to meet the plausibility standard for anything beyond ordinary negligence. However, accepting these allegations as true, the Court finds that Plaintiff has plead facts that could lead a reasonable juror to believe that Defendant's conduct was intentional, willful or reckless in its disregard of Plaintiffs rights. In light of New York case law, where Plaintiff has alleged that Defendants made repeated mistakes and refused to remedy these errors despite knowing the detrimental effect such actions would have on Plaintiff, a reasonable juror could find that Defendants were grossly negligent or intentionally harmful.
For these reasons, this Court reverses the Bankruptcy Court's dismissal of Plaintiffs second and third causes of action.

3. Fourth Cause of Action: Gross Negligence Regarding Other Appraised Properties
Finally, Plaintiff repeats and realleges his prior allegations of gross negligence and asserts that Defendants' appraisal of twelve listed properties were similarly deficient. Plaintiff states only that "the above [listed] properties were substantially undervalued by the defendants and such undervaluation was a result of gross mathematical miscalculations, improper determination of the highest and best use of the properties" and that Defendants made other similar errors in appraising the properties. (Compl. ¶¶ 39-40.)
This Court finds that Plaintiff has failed to plead facts with the required specificity *185 to state a claim for gross negligence with regard to these properties. Unlike the claims regarding the Hudson Valley property, here Plaintiff fails to specify any specific errors made in the appraisals of the listed properties and does not describe how his general complaints apply to any or all of the properties. As the plausibility standard urged by Plaintiff and set forth in Twombly and Iqbal make clear, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009). See also Baker v. Andover Associates Management Corp., 30 Misc.3d 1218, 2009 WL 7400085 at *20 (N.Y.Sup. Nov. 30, 2009). Furthermore, though pleading of specific evidence is not required, the plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949. Here, no reasonable jury could conclude that Defendants' conduct was grossly negligent based on the general complaints and vague allegations plead in support of the claim. Therefore, this Court affirms the decision of the Bankruptcy Court to grant Defendants' motion for judgment on the pleadings for the fourth cause of action.

Conclusion
For the reasons set forth above, this Court finds that the Bankruptcy Court correctly granted Defendants' motion for judgment on the pleadings on Plaintiffs first and fourth causes of action. This Court reverses the Bankruptcy Court's grant of judgment on the pleadings on Plaintiffs second and third causes of action. Therefore, the Bankruptcy Court's decision is AFFIRMED in part and REVERSED in part, and the case is remanded to the Bankruptcy Court for further proceedings in accordance with this opinion.
SO ORDERED.