OPINION OF THE COURT
Richard B. Liebowitz, J.
The plaintiff lives at 351 Walnut Street, apartment No. 3 and has lived at that address for 34 years.
On April 14, 1994 a ceramic insulator on an electric wire broke, causing a power surge to enter the plaintiff’s residence. The insulator is an electrical installation that is owned, operated and maintained by the defendant utility company.
The power surge that resulted from the broken insulator damaged or destroyed a television, a VCR and a refrigerator *918 owned by the plaintiff. The plaintiff testified that the power surge was so forceful that it thereby caused a fire in a utility pole. Plaintiff further testified that she was unable to return to her home until much later the same evening and then only after a Con Edison employee checked the premises and declared it safe.
Walter Martin, an associate engineer in the defendant’s employ for 33 years, testified on behalf of Con Edison. He admitted that the insulator in question had been installed in 1979. He also testified that this particular insulator had not been the subject of any maintenance or inspection visits since its installation. Mr. Martin further stated that Con Edison’s policy in such matters is to provide no inspection or maintenance in the absence of a complaint. Despite the existence of this policy, the witness claimed that Con Edison was not liable for any damage to the plaintiff’s property occasioned by the broken insulator and resulting power surge.
Plaintiffs witness testified that he had never seen a Con Edison crew working on the wires during his residency at the subject location. This testimony buttressed the testimony of defendant’s witness to the effect that it was not its policy to conduct regular maintenance checks of the wires in question, absent an initiating complaint.
Con Edison relies on language contained in the statutory rate schedule to support its claimed lack of liability in this case. The schedule relied on affords the utility a limited exemption from liability for negligence, and reads as follows: "Continuity of Supply: The Company will endeavor at all times to provide a regular and uninterrupted supply of service, but in case the service shall be interrupted or irregular or defective or fail from causes beyond its control or through ordinary negligence of employees, servants or agents the Company will not be liable therefor.” (Pub Serv Commn No. 8, Electricity § III [14] [a] [eff Nov. 24, 1986].)
"Gross negligence”, for which there is no exemption from liability, implies a greater lack of care than in the case of "ordinary negligence”. (Matter of Jenson v Fletcher, 277 App Div 454 [4th Dept 1950].) The essence of gross negligence is an aggravated disregard for the rights and safety of others. (Austro v Niagara Mohawk Power Corp., 103 AD2d 903 [3d Dept 1984], revd on other grounds 66 NY2d 674 [1985].)
Whether negligence is characterized as ordinary or gross is a determination for the finder of fact. (Food Pageant v Consolidated Edison Co., 54 NY2d 167 [1981].)
*919 In this case, the defendant had a responsibility to exercise the level of care which was necessary to avoid the harm complained of. In adopting a policy of not maintaining or inspecting its equipment, including the insulator in question, the defendant evinced a wanton disregard of the plaintiffs rights and was grossly negligent.
The cases cited by the defendant are not inapposite to the holding in the present case. For example, Lockwood v Niagara Mohawk Power Corp. (112 AD2d 495 [3d Dept 1985]) held that plaintiff failed to prove that a power failure was proximately caused by any conduct of the defendant where only 64 minutes elapsed between the failure of power and its correction and there was no proof that defendant did not have available resources to inspect power equipment or that those resources were not immediately addressed to the power problem.
In Newman v Consolidated Edison Co. (79 Misc 2d 153 [App Term, 2d Dept 1973]), also cited by the defendant, the court held that the statutory exemption from liability does not violate public policy to the extent that it is limited to those acts which disrupt the regular supply of service. In Devers v Long Is. Light. Co. (79 Misc 2d 165 [App Term, 2d Dept 1974]), it was held that an intentional determination to reduce voltage was not negligence; in Lee v Consolidated Edison Co. (98 Misc 2d 304 [App Term, 1st Dept 1978]), it was held that the reestablishment of service to customers based on a "reasonable system of priorities” precluded a finding of negligence. In Long v Long Is. Light. Co. (NYLJ, Mar. 14, 1979, at 14, col 6 [App Term, 2d Dept]), plaintiffs own note to the defendant to disconnect service precluded a finding of negligence; and in Messina v Long Is. Light. Co. (NYLJ, Mar. 29, 1989, at 26, col 5 [App Term, 2d Dept]), a power surge alone did not constitute gross negligence.
In none of the cited cases was the damage to property or the risk of injury to life as compelling as in the present case. Based on the testimony adduced at trial the court finds that the force of the power surge in the present case created a grave risk of harm to the plaintiff which evinced a reckless disregard for plaintiffs safety by the defendant such as to justify a finding that defendant’s failure to exercise the appropriate level of care constituted gross negligence.
In view of the foregoing, the court hereby awards damages in the sum of $1,382.35 to the plaintiff, together with costs in the sum of $5.58.