OPINION OF THE COURT
Debra Silber, J.
Can it be that Consolidated Edison Company of New York, Inc. (Con Ed or Con Edison) is completely insulated from liability for property damage claims brought by residents of public housing because such residents do not have accounts with Con Ed as their electrical service is included in their rent? This proposition was set forth on September 9, 1999 in a case that arose when, after a power failure in the wee morning hours in the dead of winter, light bulbs began “popping” and smoke began emanating from claimants’ appliances. When it was clear that the appliances (televisions, VCRs, washing machines, computers, stereos, phones, lamps, etc.) would no longer work after this incident, these actions were commenced by eight claimants who reside in eight different apartments at Breukelen Houses in Brooklyn, New York. For the reasons set forth below, the court finds that Con Ed is not insulated from liability as claimed.
Procedural History
Eight separate cases against the same two defendants, Consolidated Edison and the New York City Housing Authority (hereafter NYCHA), appeared on the calendar for trial. The first trial date was July 28, 1999. On that date, NYCHA moved for dismissal of the actions as to it, which was denied. On September 9, 1999, defendant Con Ed by its attorneys served the eight claimants in the courthouse with a notice of motion, with the date returnable left blank, to dismiss the action as to them, on the grounds that under Con Ed’s tarifi/rate schedule the utility is not liable for the ordinary negligence of its employees, but only for gross negligence. Con Ed then made an application for an adjournment, presumably so the motion could be heard on the return date. The court denied the adjournment and denied the motion as untimely. The substance of the motion is one of the two legal issues in the case. The court addresses the issue in connection with the issue of liability. Thus, an adjournment was unnecessary.
*730 Once the parties conferenced the cases with the court’s attorney, it became clear that five of the claimants did not bring their proof of damages with them. However, because the eight claims arose out of the same transaction and occurrence, the court decided, with the consent of the defendants’ attorneys, to bifurcate the trials and to try the liability portion of the case as to all claimants. After trial, with both defendants represented by counsel and claimants pro se, the court finds that Con Edison is 100% liable, that the New York City Housing Authority has no liability, and NYCHA is hereby dismissed from all eight cases.
For those claimants who were prepared to go forward, the trial on damages proceeded. These claimants are: Barbara Higgins, Patricia Swindell and Jackalyn Gribbs. The court awards Higgins $1,411.30, Swindell $268.29 and Gibbs $619, all with interest from January 9, 1999 together with the costs and disbursements allowed claimants in small claims proceedings. Small claims judgment forms shall be mailed by the court to these three claimants accompanied by copies of this decision. The damages trials for the remainder of the claimants were adjourned to October 7, 1999, in the Small Claims Part.
Liability — Duty
Con Edison provided no witnesses at trial. NYCHA provided one witness, Mr. Merone, the superintendent of the building, 103-07 Flatlands Avenue, Brooklyn, New York, who was employed at the building on January 9, 1999, the date the incident occurred. He testified that when he came to work at 9:00 a.m. that morning, Con Ed workers were in a manhole in the street working on rectifying a power outage. Apparently, cables were at some point that morning run into the building to provide temporary electric service. Mr. Merone stated that suddenly fire trucks showed up and it became a panic situation and the Con Ed workers were running around. He then learned, he testified, that the Con Ed employees connected a 220 volt line to the power lines for the building instead of 110 volts. He went around to the apartments (there are 35 in the building) and saw smoke coming from appliances and tenants were complaining that their appliances were damaged. Finally, Mr. Merone testified that the power did not come on until noon.
The first issue is whether the defendants owed a duty to claimants. If so, the second question is whether such duty was breached, and if so, by which defendant.
There is no question that NYCHA owes a duty to its tenants, well established in landlord and tenant law. However, *731 there was no testimony from any of the claimants that NYCHA breached its duty. NYCHA was, therefore, dismissed from the actions. Con Edison claims it owes no duty to the tenants in this or any public housing project due to lack of privity, that is, because the utility account is with the landlord and the cost of electricity is included in the rent. In other words, Con Ed claims the tenants are not third-party beneficiaries of the contract between Con Ed and NYCHA for electricity. Con Edison provided no case law for this proposition, and the court, finding the argument preposterous during the liability portion of the Small Claims Court trial, proceeded directly to the issue of breach. In preparing a written decision in this matter, I find that this issue of privity or entitlement to treatment as a third-party beneficiary of the contract is a question of first impression as concerns residential tenants’ property damage. There is one case concerning residential tenants, Strauss v Belle Realty Co. (65 NY2d 399 [1985]), which is distinguishable, as it concerns a tenant injured in the common area of an apartment building who fell during a blackout on defective stairs. The blackout was found to be caused by the gross negligence of Con Edison. The Court of Appeals held that while the absence of privity does not foreclose recognition of a duty, it is the responsibility of the courts, in fixing the orbit of duty, to limit the legal consequences of wrongs to a controllable degree, and to protect against crushing exposure to liability. For the reasons stated below, public policy requires finding that tenants in public housing are third-party beneficiaries of NYCHA’s contract with Con Edison for electric service.
In Milliken & Co. v Consolidated Edison Co. (84 NY2d 469 [1994]), the Court of Appeals found that commercial tenants had no right to make claims for physical damage or associated economic loss caused by a power interruption against Con Ed as a third-party beneficiary where they were submetered for electrical use and the landlord was the utility’s customer, absent an express undertaking by the utility. In Tri-Tone Litho v Consolidated Edison Co. (230 AD2d 625), commercial tenants who were not in a contractual relationship with Con Ed claimed that Con Ed failed to upgrade plaintiff’s service for several months, causing alleged economic damages. The Court found that Con Edison owed such tenants no duty. Clearly, a utility should not be liable to commercial tenants it is unaware of, conducting types of business which it is unaware of, for economic damages which could not be foreseen.
However, this analysis fails when applied to tenants in public housing. In Koch v Consolidated Edison Co. (62 NY2d 548 *732 [1984], cert denied 469 US 1210), a suit by the City of New York for damages caused by the 1977 blackout, Con Ed claimed the City was not a party to the contract or a third-party beneficiary of the contract between Con Ed and the Power Authority of the State of New York for the supply of power. The Court of Appeals held (at 559): “we have no difficulty in concluding that all the plaintiffs were third-party beneficiaries of the agreements between PASNY and Con Edison. They were precisely the consumers for whose benefit the * * * agreements [were] made between PASNY and Con Edison.” In that case, there was a written agreement and legislation that the Court was able to refer to. In this small claims proceeding, Con Edison did not provide its written contract with NYCHA for the supply of electricity. NYCHA did not provide a copy either, as this issue was only raised in the course of the trial. The court can only infer any such agreement would provide that electrical service was to be provided for the common areas of the buildings as well as for the apartments. It seems logical that if Con Edison had a duty to the City of New York for damages to persons and property directly resulting from the service interruption in 1977, in our case it can certainly be said that the residential tenants were precisely the consumers for whose benefit NYCHA contracted in its agreement with Con Edison for electrical service. The tenants’ use of the electrical service, including the types of appliances which might be found in residential apartments, was clearly foreseeable.
In Milliken (supra, at 477), the Court of Appeals aptly stated: “This Court has from time to time addressed the scope of the duty of a utility, or a similarly situated entity, arising from negligence in the performance of contractual obligations * * * Consistently, this Court has emphasized that determining the scope of the duty and the consequent sphere of potential liability is fundamentally a policy question, with the objective being to ‘ “ ‘fix[ ] the [entity’s] orbit of duty’ ” ’ so as to ‘ “ ‘ “limit the legal consequences of wrongs to a controllable degree” ’ ” ’ * * * We noted in Palka that the existence and scope of an alleged tortfeasor’s duty, at the threshold, is a legal, policy-laden determination dependent on consideration of different forces, including logic, science, competing socioeconomic policies, and contractual assumptions of responsibility.” (Citations omitted.)
The court finds that considering public policy, it is proper to put public housing tenants in Con Edison’s orbit of duty. In the instant case, for example, had the tenants not sued Con Edison, but only sued NYCHA, the cases would surely have been *733 dismissed for suing the wrong party. Even if that was not the result, it would be contrary to public policy to force NYCHA to compensate the claimants with public funds and then to expend more public funds to seek indemnification from Con Edison.
Liability — Failure to Exercise Duty of Care
The next issue is whether the duty owed to claimants was breached, and if so, if any exculpatory laws or regulations are applicable. It is here that there is a plethora of confusing and seemingly contradictory case law. Con Edison relies on language contained in its rate schedule to support its claimed lack of liability in this case. The schedule relied on affords the utility a limited exemption from liability for negligence, and reads as follows: “Continuity of Supply: The company will endeavor at all times to provide a regular and uninterrupted supply of service, but in case the supply of service shall be interrupted or irregular or defective or fail from causes beyond its control or through ordinary negligence of employees, servants or agents the Company will not be liable therefor.” (Section 14 [A] of Con Edison’s rate schedule [P.S.C. No. 9 § III] [emphasis added].) “Gross negligence,” for which there is no exemption from liability, implies a greater lack of care than in the case of “ordinary negligence.” (Jenson v Fletcher, 277 App Div 454 [4th Dept 1950].) The essence of gross negligence is an aggravated disregard for the rights and safety of others. (Austro v Niagara Mohawk Power Corp., 103 AD2d 903 [3d Dept 1984], revd on other grounds 66 NY2d 674 [1985].)
Whether negligence is characterized as ordinary or gross is a determination for the finder of fact. (Food Pageant v Consolidated Edison Co., 54 NY2d 167 [1981].) In that case, the Court found Con Ed grossly negligent for the 1977 blackout, which was then held to be res judicata in Koch (supra).
In Ricciardi v Con Edison (161 Misc 2d 917, 919 [Yonkers City Ct 1994]), the court found that “[i]n adopting a policy of not maintaining or inspecting its equipment, including the insulator in question, the defendant evinced a wanton disregard of the plaintiff’s rights and was grossly negligent.”
In this case, the defendant had a responsibility to exercise the level of care which was necessary to avoid the harm complained of. In connecting 220 volts to 110 volt lines, the court could find that Con Ed’s employee committed an act of gross negligence. It seems most basic, with regard to what an employee of Con Ed would know, that doubling the power would create a surge that would cause damages, injury, or *734 both. Surely the lines were clearly marked. Since there was no testimony on the part of anyone for defendant Con Edison, the court is entitled to draw an inference that this is in fact what happened. However, the court will not make a finding as to whether the defendant’s negligence was gross or ordinary. As will be explained, the outcome is, under the law, the same.
The rate schedule that respondent claims exculpates Con Edison from liability is not the applicable law. Section 14 (A) of Con Edison’s rate schedule (P.S.C. No. 9 § III), set forth above, concerns claims for interruption of service. Claimants here are not seeking damages for interruption of service, such as a claim for lost earnings or ruined food. Claimants are seeking reimbursement for damage caused by the supply or use of electricity, for which there is a different regulation.
Con Edison erroneously claims the regulation (section 14 [A] of the “tariff” or “rate schedule”) exculpates the utility. Because such regulations contravene public policy, the Public Service Commission promulgated 16 NYCRR 218.1 which became effective January 1, 1974, which states:
“Every * * * gas and electric corporation shall, where necessary, amend its filed tariff schedules by eliminating therefrom * * *
“(c) [p] revisions limiting the liability of the company for any damages resulting from the negligence of the company in connection with the supplying or use of electricity or gas or from the presence or operation of the company’s structures, equipment, wires, pipes, appliances or devices on the consumer’s premises” (emphasis added).
The rate schedule was then revised to include the newly required amendment, embodied in section 14 (D)* of the above-mentioned schedule. This is the section that applies to power surges caused by the utility’s employees or agents, and under this section, ordinary negligence alone is sufficient.
The Third and Fourth Departments have drawn the above distinction between damages caused by power interruptions and damages resulting from the supply or use of electricity. (Bowen v Niagara Mohawk Power Corp., 183 AD2d 293 [4th Dept 1992] [power surge]; Zoller v Niagara Mohawk Power *735 Corp., 137 AD2d 947 [3d Dept 1988] [negligent installation by-utility of a transformer which caused burnout of appliances].) In both of these cases, the Courts found the factual situations took the claim outside of the permissible exemptions from liability. The Second Department has not issued a decision on this issue, but the Appellate Term has stated in dicta the holding of Bowen and Zoller in Lo Vico v Consolidated Edison Co. (99 Misc 2d 897, 898 [1979]): “[w]e note that as to damages resulting from, the supply or use of electricity, as opposed to damages caused by the interruption of the supply of service, the utility is not absolved from liability for its ordinary negligence (see 16 NYCRR 218.1).” Additionally, the Second Department recently discussed a homeowner’s claim for damage caused by a power surge and nowhere is the utility’s exculpation mentioned. (Greer v Long Is. Light. Co., 259 AD2d 663 [1999].) Lower courts in the Second Department have followed Bowen and Zoller. (See, Margolin v Con Edison, NYLJ, Dec. 24, 1998, at 36, col 2 [Civ Ct, Kings County]; Allstate Ins. Co. v Long Is. Light. Co., 172 Misc 2d 123 [Nassau Dist Ct 1997]; Drayton v Con Edison Co., Civ Ct, Kings County, index No. SC 11260/98.)
Con Ed provided the court with numerous decisions in its favor. These are inapplicable, for the reasons stated above.
Damages
Claimant Higgins testified that two televisions were damaged, one which she repaired for $161.30 (receipt provided) and one she replaced because it was not repairable. The latter set was six years old and cost $210 when new. Claimant also testified about and provided a receipt for a new computer and printer, which she had bought her child for Christmas just a few weeks prior to the incident. They cost $1,793, and claimant had a written repair estimate of $750. Lastly, claimant testified that her stereo, which was six years old, was not repairable and was $600 when new. For the items that repair estimates were provided, the amount estimated is the proper measure of damages. For the television and stereo which are not repairable, the measure of damages is set forth in Lake v Dye (232 NY 209, 214 [1921]): “household goods[,] and effects owned and kept for personal use, are articles which cannot in any fair sense be said to be marketable, and have a market value, or at least a market value which is fairly indicative of their real value to their owner and of his loss by being deprived of them. Where such articles have been converted, the amount of the recovery ought not to be restricted to the price which *736 could be realized by a sale in the market. The owner should be allowed to recover the value to him based on his actual money loss, all the circumstances and conditions considered, resulting from his being deprived of the property, not including, however, any sentimental or fanciful value he may for any reason place upon it.” (See also, Furlan v Rayan Photo Works, 171 Misc 839; McAnarney v Newark Fire Ins. Co., 247 NY 176.)
As these items have not been replaced as yet, the court will apply “substantial justice” and award claimant $500, noting that the cost of electronics has decreased since 1992 when claimant purchased these items. When added to the repair estimates for the other items, claimant is entitled to judgment in the sum of $1,411.30.
Claimant Swindell testified that her cordless phone is inoperable, as well as her range hood, stereo and VCR. The repair estimates for the stereo and VCR totaled $192.23. The phone was $35.70 when new and the range hood was $40.36. These latter items are not repairable, claimant testified. The court finds that claimant is entitled to judgment for $268.29.
Claimant Gibbs testified she had two televisions which no longer work, one of which cost $275 and one of which cost $95, both of which were more than 10 years old. She also had a floor lamp that was $35 new a few years ago. Ms. Gibbs stated her VCR would cost $64 to fix, but had no written estimate, and that her washing machine cost $500 but only needs a new motor, and she had no estimate for the cost of the repair. The court finds that claimant is entitled to judgment for $619.

 “The Company will not be liable for any injury, casualty or damage resulting in any way from the supply or use of electricity or from the presence or operation of the Company’s structures, equipment, wires, pipes, appliances or devices on the customer’s premises, except injuries or damages resulting from the negligence of the Company.”